UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MACY SMITH AND SALLY JOHNSON, individually, and as representatives of a Class of Participants and Beneficiaries of the Recreation and Equipment, Inc. Retirement and Profit Sharing Plan, | NO. |
| Plaintiff, | COMPLAINT |
| v. | |
| RECREATIONAL EQUIPMENT, INC., BOARD OF DIRECTORS OF RECREATIONAL EQUIPMENT, INC; AND RETIREMENT PLAN COMMITTEE OF RECREATIONAL EQUIPMENT, INC., | |
| Defendant. | |

## <u>NATURE OF ACTION</u>

1.      Plaintiffs Macy Smith and Sally Johnson ("Plaintiffs"), individually, and as representatives of a Class of Participants and Beneficiaries of the Recreation and Equipment, Inc. Retirement and Profit Sharing Plan ("Plan" or "REI Plan"), bring this action under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), against Defendants Recreation and Equipment, Inc. ("REI"), the Board of Recreation and Equipment, Inc. ("Board"), and the Retirement Plan Committee of Recreational Equipment, Inc. ("Plan Committee") (collectively, "Defendants"), to remedy Defendants' breaches of fiduciary duties and prohibited transactions with regard to Forfeited Plan Assets.

2.      As fiduciaries to the Plan, Defendants were obligated at all times to act prudently and for the exclusive benefit of participants and beneficiaries, and to not engage in prohibited transactions, with regard to Forfeited Plan Assets.

3.      Plaintiffs bring this action to obtain the relief provided under ERISA § 409, 29 U.S.C. § 1109, for losses suffered by the Plan resulting from the Defendants' fiduciary breaches and prohibited transactions described below.

COMPLAINT - 1

**JURISDICTION**

4.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this is an action under 29 U.S.C. §§ 1132(a)(2) and (3) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

5.      This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

6.      This district is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred here.

**PARTIES**

7.      At all relevant times, Plaintiffs, by virtue of their former employment with REI and participation in the REI Plan, are or may become eligible to receive additional benefits under the Plan as a result of Defendants' breaches and ERISA violations. Thus, Plaintiffs are "participants" as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).

8.      Plaintiff Macy Smith is a resident of the State of Tennessee and was employed by REI as a Sales Specialist, Sales Lead, Retail Sales Manager, Manager on Duty, Visual Manager Point Person, and Interim Store Manager at REI locations in Knoxville, TN, Chattanooga, TN, Palm Beach, FL, Huntsville, AL, and Memphis, TN, from April 2018 to March 2023.

9.      Plaintiff Sally Johnson is a resident of the State of Oregon and was employed by REI as District Special Events Administrator SoCal & Arizona, Specialist Retail Operations Department, Manager Outdoor Programs Department, Sr. Manager in Outdoor Programs Department, and Sr. Manager in Marketing Department, at REI locations in Manhattan Beach, CA and Kent, WA, from June 1, 2002 to December 31, 2020.

10.      Plaintiffs have Article III standing to bring this action on behalf of the REI Plan because they suffered actual injuries to their Plan accounts by not having forfeited Plan assets

COMPLAINT - 2

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

reallocated to their Plan accounts as a result of REI reducing employer contributions for their own benefit. Those injuries are fairly traceable to Defendants using Plan forfeitures for their own benefit to reduce their future contributions to the REI Plan. Finally, these injuries diminished the savings in Plaintiffs' retirement accounts in the Plan and reduced, dollar for dollar (and more when compounded) Plaintiffs' retirement savings.

11.    Having established Article III standing, Plaintiffs may seek recovery under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

12.    The Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, the misuse and misallocation of Plan forfeitures) necessary to understand that Defendants breached their fiduciary duties and engaged in prohibited transactions until shortly before this suit was filed.

13.    Having never managed a very large 401(k) Plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of the misuse and misallocation of Plan forfeitures.

14.    With 24,455 active participants and $1,020,184,239 billion in assets under management as of December 31, 2023, the REI Plan is one of the largest retirement plans in the country. It ranks in the top 0.1% of over 500,000 401(k) plans in terms of the number of participants and the top 0.1% of plans in terms of the value of its assets.

15.    The Plan is a defined contribution benefit plan under ERISA § 3(34), 29 U.S.C. § 1002(34), and is subject to the provisions of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

16.    REI is an American retail and outdoor recreation services corporation. REI sells gear for camping, hiking, climbing, cycling, running, fitness, water and snow activities, and traveling; and clothing for men, women, and children.  REI has over 15,000 employees, and has its principal headquarters at 1700 45th Street East, Sumner, WA 98352.

COMPLAINT - 3

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

17.    At all relevant times, REI has been the sponsor of the Plan per ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B); a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C); and a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(2)(A), to the extent that it appointed members of the Plan Committee and otherwise exercised discretion over the administration and management of the Plan and/or control of Plan assets.

18.    At all relevant times, the Plan Committee was the Plan Administrator under ERISA § 3(16), 29 U.S.C. § 1002(16); a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A); and Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that it had or exercised discretion over the administration or management of the Plan and/or control of Plan assets.

## FACTUAL ALLEGATIONS

19.    Under ERISA, anyone who exercises discretion or control over plan assets, including the Plan Sponsor, is a fiduciary (hereafter "Plan fiduciary" or Plan fiduciaries").

20.    In accordance with ERISA § 4(a), 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

21.    As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." ERISA § 3(34), 29 U.S.C. § 1002(34).

22.    Under the terms of the Plan, the Plan fiduciaries were required to, among other things, act "for the exclusive purpose of providing benefits to Participants and their beneficiaries and defraying reasonable expenses of administering the Plan." ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

23.    The Plan refers to the expenses of administering the Plan as "Plan expenses."

COMPLAINT - 4

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

24.     Throughout the Class Period (December 16, 2018 to the date of judgment), the Plan has been funded by a combination of wage withholdings by Plan participants and REI matching contributions, among other sources. These Plan assets are deposited into the Plan's trust fund and allocated to individual participant accounts.

25.     Throughout the Class Period, the terms of the Plan require REI to make matching contributions to the Plan based on each participant's contributions.

26.     REI must pay all matching contributions that have accrued throughout a calendar year to the Plan trustee within a reasonable period of time after the end of the prior calendar year.

27.     Upon their deposit into the Plan's trust fund,  all participant contributions and company contributions *become assets of the Plan*.

28.     Under the terms of the REI Plan, participants are immediately vested in their own contributions, as well as any actual earnings thereon; and vested in Company matching contributions and any actual earnings on such amounts, based on gradual vesting schedules of three years for company contributions made after May 2021 and five years for those contributions made before May 2021, before being fully vested.

29.     To the extent a participant is not 100% vested upon termination of employment, the participant forfeits the value of company contributions (hereafter "Forfeited Plan Assets") in their account on the earlier of the date the participant takes a distribution of their vested interest in the Plan or the date the participant incurs a five-consecutive-year break in vesting service.

30.     Under the terms of the Plan, the January 1, 2024 REI Plan Summary Plan Description ("SPD") provides:

> If you terminate employment before becoming 100% vested in your REI contributions, you forfeit (lose the right to) any part of your account that is not vested.

COMPLAINT - 5

Forfeitures of non-vested amounts **will be used in the following order to:**

    1. Restore forfeitures to rehired participants,
    2. Pay administrative expenses, and
    3. Offset the amount of REI contributions to the Plan.

2024 SPD at 8 (emphasis added).

31.    In other words, forfeited nonvested amounts are required ***first*** to restore forfeitures to rehired participants, ***second*** to to pay administrative expenses, and only once the administrative expenses of the Plan are paid, then ***any remaining*** forfeitures may be used ***third*** to offset the amount of REI contributions to the Plan.

32.    Accordingly, under the terms of the Plan, the Plan fiduciaries did not have discretion related to the use of Forfeited Plan Assets that were forfeited by Plan participants.

33.    Under ERISA, when making the decision regarding the use of Forfeited Plan Assets, the Plan fiduciaries are required by ERISA § 404(a)(1)(D), 29 U.S.C. § 1104 (a)(1)(D) to discharge their duties "in accordance with the documents and instruments governing the plan."

34.    Despite the clear requirement under the terms of the Plan that the Forfeited Plan Assets were required to "[p]ay administrative expenses" **before "**[o]ffset[ing] the amount of REI contributions to the Plan," the Plan Committee instead ***did not*** use the Forfeited Plan Assets to pay Plan expenses before reducing their own contributions to the Plan.

35.    Contrary to the explicit terms of the Plan, and throughout the Class Period, the Plan Committee caused Plan participants to pay significant portions of the Plan expenses contrary to the express provisions of the Plan through deductions from the accounts of Plan participants.

36.    Additionally, under ERISA, when making the decision regarding the use of Forfeited Plan Assets, the Plan fiduciaries have been and are required by ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) to "discharge [their] duties with respect to a plan solely in the interest

COMPLAINT - 6

of the participants and beneficiaries *and for the exclusive purpose of providing benefits to participants* and their beneficiaries *and defraying reasonable expenses* of administering the plan" (emphasis added).

37. During 2018, a minimum of $2,865,000 in Forfeited Plan Assets was available to the Plan Committee to use to pay Plan expenses.

38. During 2018, instead of using the Forfeited Plan Assets to reduce Plan expenses as required by the express terms of the Plan, the Plan Committee caused Plan participants to pay a minimum of $678,525 in Plan expenses through deductions from the accounts of Plan participants and also caused Plan participants to pay other Plan expenses indirectly.

39. During 2018, the Plan Committee, contrary to the express terms of the Plan, exercised discretion over, and control of, plan assets when deciding to use $2,865,000 in Forfeited Plan Assets to, among other things, offset REI contributions instead of paying all Plan expenses with the Forfeited Plan Assets.

40. On December 31, 2018, unallocated Forfeited Plan Assets were $1,322,000.

41. During 2018, the Plan Committee exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,322,000 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $1,322,000 on December 31, 2018.

42. During 2019, a minimum of $1,322,000 in Forfeited Plan Assets was available to the Plan Committee to use to pay Plan expenses.

43. During 2019, instead of using the Forfeited Plan Assets to reduce Plan expenses as required by the express terms of the Plan, the Plan Committee caused Plan participants to pay a

COMPLAINT - 7

minimum of $702,628 in Plan expenses through deductions from the accounts of Plan participants, along with other Plan expenses paid indirectly.

44.    During 2019, the Plan Committee, contrary to the express terms of the Plan, exercised discretion over, and control of, plan assets when deciding to use $1,322,000 in Forfeited Plan Assets to, among other things, offset REI contributions instead of paying all Plan expenses with the Forfeited Plan Assets.

45.    Moreover, on December 31, 2019, unallocated Forfeited Plan Assets were $1,368,000.

46.    During 2019, the Plan Committee exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,368,000 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $1,368,000 on December 31, 2019.

47.    During 2020, a minimum of $1,360,000 in Forfeited Plan Assets was available to the Plan Committee to use to pay Plan expenses.

48.    During 2020, instead of using the Forfeited Plan Assets to reduce Plan expenses as required by the express terms of the Plan, the Plan Committee caused Plan participants to pay a minimum of $729,963 in Plan expenses through deductions from the accounts of Plan participants, along with other Plan expenses indirectly.

49.    During 2020, the Plan Committee, contrary to the express terms of the Plan, exercised discretion over, and control of, plan assets when deciding to use $1,360,000 in Forfeited Plan Assets to, among other things, offset REI contributions instead of paying all Plan expenses with the Forfeited Plan Assets.

COMPLAINT - 8

50.     Moreover, on December 31, 2020, unallocated Forfeited Plan Assets were $1,561,000.

51.     During 2020, the Plan Committee exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,561,000 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $1,561,000 on December 31, 2020.

52.     During 2021, a minimum of $1,561,000 in Forfeited Plan Assets was available to the Plan Committee to use to pay Plan expenses.

53.     During 2021, instead of using the Forfeited Plan Assets to reduce Plan expenses as required by the express terms of the Plan, the Plan Committee caused Plan participants to pay a minimum of $839,201 in Plan expenses through deductions from the accounts of Plan participants, along with other Plan expenses indirectly.

54.     During 2021, the Plan Committee, contrary to the express terms of the Plan, exercised discretion over, and control of, plan assets when deciding to use $1,561,000 in Forfeited Plan Assets to, among other things, offset REI contributions instead of paying all Plan expenses with the Forfeited Plan Assets.

55.     Moreover, on December 31, 2021, unallocated Forfeited Plan Assets were $1,667,000.

56.     During 2021, the Plan Committee exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,667,000 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $1,667,000 on December 31, 2021.

COMPLAINT - 9

57.    During 2022, a minimum of $1,670,000 in Forfeited Plan Assets was available to the Plan Committee to use to pay Plan expenses.

58.    During 2022, instead of using the Forfeited Plan Assets to reduce Plan expenses as required by the express terms of the Plan, the Plan fiduciaries caused Plan participants to pay a minimum of $940,553 in Plan expenses through deductions from the accounts of Plan participants, along with other Plan expenses indirectly.

59.    During 2022, the Plan Committee, contrary to the express terms of the Plan, exercised discretion over, and control of, plan assets when deciding to use $1,670,000 in Forfeited Plan Assets to, among other things, offset REI contributions instead of paying all Plan expenses with the Forfeited Plan Assets.

60.    Moreover, on December 31, 2022, unallocated Forfeited Plan Assets were $1,471,000.

61.    During 2022, the Plan Committee exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,471,000 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $1,471,000 on December 31, 2022.

62.    During 2023, a minimum of $1,581,000 in Forfeited Plan Assets was available to the Plan Committee to use to pay Plan expenses.

63.    During 2023, instead of using the Forfeited Plan Assets to reduce Plan expenses as required by the express terms of the Plan, the Plan Committee caused Plan participants to pay a minimum of $1,043,354 in Plan expenses through deductions from the accounts of Plan participants, along with other Plan expenses indirectly.

COMPLAINT - 10

64.     During 2023, the Plan Committee, contrary to the express terms of the Plan, exercised discretion over, and control of, plan assets when deciding to use $1,581,000 in Forfeited Plan Assets to, among other things, offset REI contributions instead of paying all Plan expenses with the Forfeited Plan Assets.

65.     Moreover, on December 31, 2023, unallocated Forfeited Plan Assets were $668,000.

66.     During 2023, the Plan Committee exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $668,000 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $668,000 on December 31, 2023.

67.     In all, the following chart shows the Plan forfeitures from 2018 through 2023:

| Plan Demographics | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| Participants | 16,171 | 17,595 | 18,260 | 19,907 | 22,612 | 24,800 |
| Assets | $615,816,357 | $762,799,838 | $869,384,915 | $994,915,675 | $840,842,468 | $1,020,184,239 |
| Average Account Balance | $38,082 | $43,353 | $47,611 | $49,978 | $37,186 | $41,136 |
| Termed Participants < 100% Vested | 738 | 667 | 693 | 886 | 909 | 1,014 |

68.     Under the terms of the Plan and the provisions of ERISA, and throughout the Class Period, the Plan Committee improperly, disloyally, and imprudently exercised discretion over, and control of, plan assets when directing the use of Forfeited Plan Assets.

69.     Throughout the Class Period, the Plan Committee improperly, disloyally, and imprudently exercised discretion when deciding to use Forfeited Plan Assets to reduce employer contributions.

70.     Additionally, that improper, disloyal, and imprudent exercise of discretion was in the best interest of REI because that option decreased REI's own Plan contribution costs.

71.     Similarly, throughout the Class Period, the Plan Committee's decisions to use Forfeited Plan Assets to reduce employer contributions instead of paying Plan expenses reduced

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

the value of Plan assets, and the accounts of Plan participants and the benefits available to Plan participants.

72.   No facts or circumstances exist during the Class Period that make the Plan Committee's decisions to use Forfeited Plan Assets to reduce Company contributions consistent with discharging their duties with respect to the Plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and for defraying reasonable expenses of administering the Plan.

73.   Throughout the Class Period, the Plan Committee improperly, disloyally and imprudently, exercised discretion over, and control of, plan assets, and consistently and reflexively chose to use the Forfeited Plan Assets for REI's interest, to the detriment of the Plan and Plan participants.

74.   All else being equal, had the Plan Committee decided throughout the Class Period to use Forfeited Plan Assets to defray Plan expenses or allocated the Forfeited Plan Assets back to eligible participants, the value of the Plan and the value of the accounts of the Plan participants would have been greater thereby providing greater retirement benefits to Plan participants.

75.   The following table illustrates the amount the Plan and its participants (including Plaintiffs) lost as a result of Defendants' use of Plan forfeitures for their own benefit during the Class Period:

| Forfeitures Used for Employer's Benefit | | | | | | |
|---|---|---|---|---|---|---|
| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| Forfeitures Used to Reduce Employer Contributions | $2,865,000 | $1,322,000 | $1,360,000 | $1,561,000 | $1,670,000 | $1,581,000 |
| Compounding Percentage (Plan Return) | | 21.76% | 15.36% | 14.15% | -18.13% | 21.02% |
| Potential Cumulative Compounded Losses | $2,865,000 | $4,810,565 | $6,909,411 | $9,448,345 | $9,405,427 | $12,963,211 |
| Sources: | 2018 Form 5500, Page 28 of 38 | 2019 Form 5500, Page 28 of 38 | 2020 Form 5500, Page 28 of 39 | 2021 Form 5500, Page 32 of 42 | 2022 Form 5500, Page 31 of 39 | 2023 Form 5500, Page 33 of 41 |

76.   From 2018 to 2023, Defendants used forfeited funds to reduce contributions to the Plan, which, when compounded by Plan return over the relevant time period, is **$12,963,211**.

COMPLAINT - 12

77.    ERISA explicitly requires Plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

78.    Furthermore, in deciding to use Plan forfeitures to benefit itself as far as reducing future company contributions through use of plan assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing violates the ERISA fiduciary prohibited transaction rules under ERISA § 406(b), 29 U.S.C. § 1106(b).

79.    Defendants have not used the forfeited funds to pay Plan expenses, and have thereby failed to reduce or eliminate the amounts charged to the participants' individual accounts to cover such expenses.

80.    Instead, Defendants have consistently utilized the forfeited funds in the Plan exclusively for the Company's own benefit, to the detriment of the Plan and its participants, by using those Plan assets solely to reduce REI's obligation to making matching contributions to the Plan.

81.    It would have been in the best interests of the Plan and its participants for REI to use the forfeiture amounts to defray the Plan's administrative expenses, rather than to reduce REI's own contribution obligations, which amounted to self-dealing on REI's part as a fiduciary with plan assets.

82.    By not following the order for allocation of Plan forfeitures in the Plan by first paying Plan administration expenses before using forfeitures for any employer contributions, the Plan Committee cost the Plan and its participants **$5,833,345**, as detailed below:

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

| Forfeitures Not Used for Direct Plan Expenses | | | | | | |
|---|---|---|---|---|---|---|
| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| Minimum Forfeitures Available to offset Plan Expenses (Only Direct Compensation) | $2,865,000 | $1,322,000 | $1,360,000 | $1,561,000 | $1,670,000 | $1,581,000 |
| Total Direct Compensation | $699,525 | $724,628 | $751,963 | $839,201 | $940,553 | $1,043,354 |
| Forfeitures used to pay Plan Expenses | $21,000 | $22,000 | $22,000 | $0 | $0 | $0 |
| Potential Losses | $678,525 | $702,628 | $729,963 | $839,201 | $940,553 | $1,043,354 |
| Compounding Percentage (Plan Return) | | 21.76% | 15.36% | 14.15% | -18.13% | 21.02% |
| Potential Cumulative Compounded Losses | $678,525 | $1,528,833 | $2,493,607 | $3,685,745 | $3,958,098 | $5,833,345 |
| Sources: | 2018 Form 5500, Page 28 of 38 | 2019 Form 5500, Page 28 of 38 | 2020 Form 5500, Page 28 of 39 | 2021 Form 5500, Page 32 of 42 | 2022 Form 5500, Page 31 of 39 | 2023 Form 5500, Page 33 of 41 |

83.     While Defendants' reallocation of the forfeitures to reduce its future non-elective contributions benefitted REI by reducing its own contributions, it harmed the Plan, along with its participants and beneficiaries, by reducing future Company contributions that would otherwise have increased Plan assets and by causing participants to incur deductions from their individual accounts each year to cover administrative expenses that would otherwise have been covered in whole or in part by the forfeited funds.

84.     In so doing, Defendants breached their fiduciary duty of loyalty to the Plan, engaged in prohibited transactions, and cost the Plaintiffs and class members tens of millions of dollars of lost retirement income.

## **CLASS ACTION ALLEGATIONS**

85.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1), or, in the alternative, 23(b)(2), on behalf of the following Class:

> All participants in and beneficiaries of the Recreational and Equipment Inc. Retirement and Profit Sharing Plan at any time from the earlier of (i) six years before the filing of this action, or (ii), in the event the Court determines that Defendants have concealed the facts and circumstances that would have apprised Plaintiffs and the Class of the existence of Defendants' breaches through the date of judgment.

86.     The members of Class are so numerous that joinder of all members is impracticable. At all relevant times, the number of Class members was approximately 24,000 or more.

87.     Common questions of law and fact exist as to all members of the Class.  Among such questions are:

i.  Whether Defendants are fiduciaries with respect to the administration, management and supervision of the REI Plan;

ii. Whether Defendants breached their fiduciary duties in how they allocated Plan forfeitures;

iii. Whether Defendants engaged in prohibited transactions with plan assets, by using Plan forfeitures to reduce REI's Plan contributions rather than paying Plan expenses; and,

iv. Whether Defendants' breaches of fiduciary duties and prohibited transactions caused losses to the Plan and its participants, and if so, in what amounts.

88.     Plaintiffs' claims are typical of the claims of the Class pursuant to Fed. R. Civ. P. 23(a)(3) because Plaintiffs were participants during the time period at issue, and all participants in the Plan were harmed by Defendants' misconduct with regard to Plan forfeitures.

89.     Plaintiffs will adequately represent the Class pursuant to F. R. Civ. P. 23(a)(4), because they were participants in the Plan during the Class Period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

90.     Class certification of Plaintiffs' claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of non-party Class members.

91.     In the alternative, certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole.

COMPLAINT - 15

92.     Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation, and will adequately represent the Class.

93.     The claims brought by the Plaintiffs arise from fiduciary breaches and prohibited transactions as to the Plan in its entirety and do not involve mismanagement of individual accounts.

94.     The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

95.     Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied, and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

96.     Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

97.     Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policies supporting exhaustion of administrative remedies in certain circumstances – particularly when the Court must review, and where appropriate, defer to a Plan administrator's decision – does not exist here because courts will not defer to a Plan administrator's legal analysis and interpretation.

## FIRST CLAIM
## BREACH OF THE DUTY TO FOLLOW PLAN TERMS
### (ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D))

98.     Plaintiffs reallege and incorporates paragraphs 1-97 of the Complaint.

99.     When exercising control over Forfeited Plan Assets and using them to reduce company contributions, the Plan Committee failed to discharge their duties in accordance with

3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

the terms of the Plan in violation of ERISA, which required that Forfeited Plan Assetst be used to pay the administrative expenses of the Plan before being used to reduce REI contributions to the Plan.

100.    As a direct and proximate result of the Plan Committee's fiduciary breaches, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to ERISA § 409, 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty to follow Plan terms. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

101.    Each of the Defendants knowingly participated in the breach of the other Defendants, knowing that such acts were a breach; enabled other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties; and knew of the breach by the other Defendants, yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of their co-fiduciary under ERISA § 405(a), 29 U.S.C. § 1105(a).

102.    Plaintiffs have suffered losses as a direct result of the Plan Committee's failure to follow the terms of the Plan due to the misallocation of Forfeited Plan Assets.

## SECOND CLAIM
### BREACH OF THE DUTY OF LOYALTY
### (ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A))

103.    Plaintiffs reallege and incorporates paragraphs 1-102 of the Complaint.

104.    When exercising discretion and control over Forfeited Plan Assets and using them to reduce company contributions, the Plan Committee considered only the best interest of REI, as opposed to Plan participants in violation of ERISA's fiduciary duty of loyalty.

COMPLAINT - 17

105.    When exercising control over Forfeited Plan Assets, the Plan Committee failed to act solely in the interest of the Plan participants and beneficiaries, and for the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expenses of administering the plan, all in violation of ERISA. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

106.    As a direct and proximate result of the Plan Committee's fiduciary breaches, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to ERISA § 409, 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

107.    Each of the Defendants knowingly participated in the breach of the other Defendants, knowing that such acts were a breach; enabled other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties; and knew of the breach by the other Defendants, yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of their co-fiduciary under ERISA § 405(a), 29 U.S.C. § 1105(a).

108.    Plaintiffs have suffered losses as a direct result of the Plan Committee's breach of their duty of loyalty with regard to its misallocation of Forfeited Plan Assets.

### THIRD CLAIM
**BREACH OF THE DUTY OF PRUDENCE**
**(ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B))**

109.    Plaintiffs reallege and incorporate paragraphs 1-108 of the Complaint.

110.    When exercising control over Forfeited Plan Assets and using them to reduce company contributions, the Plan Committee failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity

1    and familiar with such matters would use in the conduct of an enterprise of a like character and

2    with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

3         111.    When deciding how to allocate Forfeited Plan Assets, the Plan Committee utilized

4    an imprudent and flawed process. Despite the conflict of interest presented by

5    alternatives under both ERISA and the Plan, Defendants failed to undertake any reasoned and

6    impartial decision-making process to determine whether using the Forfeited Plan Assets to

7    reduce the Company's own contribution expenses, as opposed to paying Plan expenses or for

8    other purposes allowable under ERISA, was in the best interest of the Plan's participants or was

9    prudent.

10        112.    By refusing to use Forfeited Plan Assets to eliminate Plan expenses that were

11   instead charged to participant accounts, and instead deciding to use those Plan assets to reduce

12   REI's own contribution expenses, the Plan Committee imprudently caused the value of the Plan's

13   assets to decrease by causing  participants to incur expense deductions from their individual

14   accounts that would otherwise have been covered in whole or in part by utilizing the Forfeited

15   Plan Assets to pay such Plan expenses.

16        113.    Had the Plan Committee conformed with the minimum standards of care required

17   under ERISA, it would not have used Forfeited Plan Assets to reduce REI's contributions to the

18   Plan.

19        114.    Plaintiffs have suffered losses as a direct result of the the Plan Committee's breach

20   of their duty of prudence with regard to its misallocation of Forfeited Plan Assets.

21                         **FOURTH CLAIM**
                **SELF-DEALING /FIDUCIARY PROHIBITED TRANSACTIONS**
22               **(ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1))**

23        115.    Plaintiffs reallege and incorporate paragraphs 1-114 of the Complaint.

24

COMPLAINT - 19

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

116.    ERISA § 406(b), 29 U.S.C. § 1106(b), provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

117.    The Plan Committee violated this prohibition in its management and control of Forfeited Plan Assets. By allocating Forfeited Plan Assets to offset REI's outstanding and unpaid matching contributions owed to the Plan, thereby saving REI tens of millions of dollars in contribution expenses, the Plan Committee dealt with the assets of the Plan in their own interest and for their own account.

118.    As a result of this prohibited conduct, the Plan Committee, a Plan fiduciary, caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and the lost investment returns on those assets.

119.    Each member of the Plan Committee is personally liable under ERISA § 409(a), 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the improper use of Plan assets, and for other equitable or remedial relief as appropriate.

**FIFTH CLAIM**
**PARTY-IN-INTEREST PROHIBITED TRANSACTIONS**
**(ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1))**

120.    Plaintiffs reallege and incorporate paragraphs 1-119 of the Complaint.

121.    ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

COMPLAINT - 20

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

122. Both REI and the Plan Committee are parties in interest, as that term is defined under ERISA § 3(14), 29 U.S.C. § 1002(14), because they are Plan fiduciaries and because REI is the employer of Plan participants.

123. By electing to use Forfeited Plan Assets in the Plan as a substitute for future employer contributions to the Plan, and thereby saving REI tens of millions of dollars in contribution expenses, Defendants REI and the Plan Committee caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of a party in interest.

124. As a result of these prohibited transactions, Defendants REI and the Plan Committee caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

125. Each of these Defendants are personally liable under ERISA § 409(a), 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the party-in-interest prohibited transactions alleged in this claim, to reverse and/or correct the prohibited transactions, to restore to the Plan all assets and profits obtained through the use of Plan assets, and for other equitable or remedial relief as appropriate.

**SIXTH CLAIM**
**Failure to Adequately Monitor Other Fiduciaries**
**(ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1))**

126. Plaintiffs reallege and incorporate paragraphs 1-125 of the Complaint.

127. Defendants REI and the Board had the authority to appoint and remove members or individuals responsible for Plan forfeitures on the Plan Committee, and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

128. In light of this authority, Defendants REI and the Board had a duty to monitor those individuals responsible for Plan forfeitures on the Plan Committee to ensure that they were

COMPLAINT - 21

adequately performing their fiduciary obligations, and to take prompt and effective action to protect the REI Plan in the event that these individuals were not fulfilling those duties.

129.    Defendants REI and Board had a duty to ensure that the individuals responsible for Plan forfeitures possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; and maintained adequate records of the information on which they based their decisions and analysis with respect to the REI Plan's forfeitures.

130.    The objectively imprudent, disloyal, and conflicted manner in which Defendant Plan Committee handled Plan forfeitures inferentially establish that Defendants REI and the Board breached their duty to monitor by, among other things:

(a)    Failing to monitor and evaluate the performance of individuals responsible for Plan forfeitures on the Plan Committee or have a system in place for doing so, standing idly by as the REI Plan misallocated Plan forfeitures for REI's benefit;

(b)    Failing to monitor the process by which the Plan Committee was evaluated and failing to investigate the proper use of Plan forfeitures; and

(c)    Failing to remove individuals responsible for Plan forfeitures on the Plan Committee whose performance was inadequate due to their continued misallocation of Plan forfeitures for the benefit of REI.

131.    As a consequence of the breaches of the duty to monitor for Plan forfeitures, the Plaintiffs and Plan participants suffered tens of millions of dollars of objectively unreasonable and unnecessary monetary losses.

132.    Pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants REI and the Board are liable to restore to the REI Plan all losses caused by their failure to adequately monitor individuals responsible for Plan forfeitures on the Plan Committee. In addition, Plaintiffs are entitled to equitable and other appropriate relief as set forth in the Prayer for Relief.

COMPLAINT - 22

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and request the following relief:

A.  A determination that this action may proceed as a class action under Fed. R. Civ. P. 23(b)(1), or, in the alternative, Fed. R. Civ. P. 23(b)(2);

B.  Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.  A Declaration that Defendants are fiduciaries, have breached their fiduciary duties under ERISA, and engaged in prohibited transactions, causing harm to Plan participants and beneficiaries;

D.  An Order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breach of fiduciary duties and prohibited transactions, including restoring to the Plan all losses resulting from using Plan forfeitures to inappropriately benefit REI by reducing their future employer contributions, and restoring to the Plan all profits Defendants made through use of the Plan's assets, and restoring to the Plan all profits that the Participants would have made if Defendants had not engaged in prohibited transactions;

E.  An Order requiring REI to disgorge all profits received from, or in respect of, the Plan, and/or other equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against REI as necessary to effectuate such relief and prevent REI's unjust enrichment;

F.  An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties;

G.  Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciaries/consultants to run the Plan, along with removal of plan fiduciaries deemed to have breached their fiduciary duties;

H.  An award of pre-judgment interest pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

I.  An award of attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.  Such other and further relief as the Court deems equitable and just.

December 17, 2024                    Respectfully submitted,

COMPLAINT - 23

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**DEBOFSKY LAW, LTD.**

_/s/ Marie E. Casciari_
Marie E. Casciari (WSBA # 58223)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Telephone: (206) 752-5491
Facsimile: (312) 600-4426
Email: mcasciari@debofsky.com


**WALCHESKE & LUZI, LLC**

Paul M. Secunda*
(_pro hac vice_ admission pending)
235 North Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
Facsimile: (262) 565-6469
Email: psecunda@walcheskeluzi.com

_Attorneys for Plaintiffs and Proposed Class_

COMPLAINT - 24