THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MACY SMITH AND SALLY JOHNSON,
individually, and as representatives of a Class
of Participants and Beneficiaries of the
Recreation and Equipment, Inc. Retirement
and Profit Sharing Plan,

        Plaintiff,

        v.

RECREATIONAL EQUIPMENT, INC.,
BOARD OF DIRECTORS OF
RECREATIONAL EQUIPMENT, INC;
AND RETIREMENT PLAN COMMITTEE
OF RECREATIONAL EQUIPMENT, INC.,

        Defendant.

NO. 3:24-cv-06032-TMC

AMENDED COMPLAINT

## NATURE OF ACTION

1.     Plaintiffs Macey Smith and Sally Johnson ("Plaintiffs"), individually, and as

representatives of a Class of Participants and Beneficiaries of the Recreation and Equipment, Inc.

Retirement and Profit Sharing Plan ("Plan" or "REI Plan"), bring this action under ERISA Section

502(a)(2), 29 U.S.C. § 1132(a)(2), against Defendants Recreation and Equipment, Inc. ("REI"),

the Board of Recreation and Equipment, Inc. (the "Board"), and the Retirement Plan Committee

of Recreational Equipment, Inc. ("Plan Committee") (collectively, "Defendants"), to remedy

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

Defendants' breaches of fiduciary duties with regard to excessive recordkeeping and administrative ("RKA") fees.

2.      As fiduciaries to the Plan, Defendants were obligated at all times to act prudently with regard to RKA fees.

3.      Plaintiffs bring this action to obtain the relief provided under ERISA § 409, 29 U.S.C. § 1109, for losses suffered by the Plan resulting from the Defendants' fiduciary breaches described below.

## JURISDICTION

4.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this is an action under 29 U.S.C. §§ 1132(a)(2) and (3) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

5.      This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

6.      This district is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

7.      At all relevant times, Plaintiffs, by virtue of their former employment with REI and participation in the REI Plan, are or may become eligible to receive additional benefits under the Plan as a result of Defendants' breaches and ERISA violations. Thus, Plaintiffs are "participants" as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).

AMENDED COMPLAINT - 2

8.      Plaintiff Macy Smith is a resident of the State of Tennessee and was employed by REI as a Sales Specialist, Sales Lead, Retail Sales Manager, Manager on Duty, Visual Manager Point Person, and interim store manager at REI locations in Knoxville, TN, Chattanooga, TN, Palm Beach, FL, Huntsville, AL, and Memphis, TN, from April 2018 to March 2023.

9.      Plaintiff Sally Johnson is a resident of the State of Oregon and was employed by REI as District Special Events Administrator SoCal & Arizona, Specialist Retail Operations Department, Manager Outdoor Programs Department, Sr. Manager in Outdoor Programs Department, and Sr. Manager in Marketing Department, at REI locations in Manhattan Beach, CA and Kent, WA, from June 1, 2002 to December 31, 2020.

10.     Plaintiffs have Article III standing to bring this action on behalf of the REI Plan because they suffered actual injuries to their Plan accounts by paying excessive RKA fees to the Plan recordkeeper, Schwab Retirement Plan Services Inc. ("Schwab"). Those injuries are fairly traceable to Defendants using Schwab to provide RKA services. Finally, these injuries diminished the savings in Plaintiffs' retirement accounts in the Plan and reduced, dollar for dollar (and more when compounded) Plaintiffs' retirement savings.

11.     Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

12.     The Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, the excessive cost of RKA services) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed.

AMENDED COMPLAINT - 3

13.     Having never managed a very large 401(k) Plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of the excessive fees associated with RKA fees.

14.     With 24,455 active participants and $1,020,184,239 billion in assets under management as of December 31, 2023, the REI Plan is one of the largest retirement plans in the country. It ranks in the top 0.1% of over 500,000 401(k) plans in terms of the number of participants and the top 0.1% of plans in terms of the value of its assets.

15.     As set forth in more detail below, Defendants, as fiduciaries of the Plan, failed to fulfill their fiduciary duties to prudently ensure the Plan's bundled recordkeeping and administrative ("Bundled RKA") expenses were non-discriminatory, reasonable, and not excessive.

16.     401(k) defined contribution plans such as the REI Plan have become America's primary retirement savings vehicle. As with all defined contribution retirement plans that require participants to bear the costs of plan administration, the Plan participants' retirement savings suffer when the Plan charges participants high fees.

17.     The marketplace for retirement plan services, like Bundled RKA, is established and competitive. Retirement plans the size of the REI Plan have the bargaining power to obtain very low-cost Bundled RKA services from financial services providers.  The overall trend in Bundled RKA has been markedly downward over time.

18.     However, because of Defendants' failure to implement a prudent process to control the Plan's Bundled RKA expenses, and failure to properly understand and evaluate the amount being paid for those services from all sources despite the express regulatory command to do so, the Plan's participants with account balances over $5,000 paid vastly more than what comparable very large retirement plans paid for comparable Bundled RKA services.

AMENDED COMPLAINT - 4

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

19.    Recreational Equipment, Inc. ("REI") is an American retail and outdoor recreation services corporation. REI sells camping gear, hiking, climbing, cycling, water, running, fitness, snow, travel equipment, and men, women, and kids clothing.  REI has over 15,000 employees and has its principal headquarters at 1700 45th Street East, Sumner, WA 98352.

20.    At all relevant times, REI has been the sponsor of the Plan per ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), to the extent that it appointed members of the Plan Committee and otherwise exercised discretion over the administration and management of the Plan and/or control of Plan assets.

21.    At all relevant times, the Plan Committee was the Plan Administrator under ERISA § 3(16), 29 U.S.C. § 1002(16) and Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that it had or exercised discretion over the administration or management of the Plan and/or control of Plan assets.

22.    The members of the Committee (the "Plan Committee Members") are also fiduciaries for the Plan. "[W]here, as here, a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by the company." *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1156 (9th Cir. 2000).

23.    Defendants chose Schwab to provide the Plan's Bundled RKA services during the Class Period.

## **FACTUAL ALLEGATIONS**

24.    ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the Plan, that are covered by ERISA.  ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A)

AMENDED COMPLAINT - 5

for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1)(A), (B).

25.     ERISA's fiduciary duties under have been described as being among the "highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).

26.     The obligation to ensure that retirement plan fees are reasonable is at the heart of ERISA fiduciary duties. *See Marshall v. Snyder*, 572 F.2d 894, 897 (2d Cir. 1978) ("The responsibility for paying reasonable compensation was the unequivocal fiduciary responsibility of the [plan's fiduciaries].")

27.     As the Ninth Circuit explained, "cost-conscious management is fundamental to prudence in the investment function." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (*en banc*) (quoting Restatement (Third) of Trusts § 90(c)(3), cmt. *b*).

28.     The content of ERISA fiduciary's duties is "derived from the common law of trusts." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2465 (2014). Therefore "[i]n determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Tibble v. Edison Int'l,* 575 U.S. 523, 528-529 (2015). Under the common law of trusts, fiduciaries may "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." Restatement (Third) of Trusts § 90(c)(3) (2007).

29.     In determining whether ERISA fiduciary defendants fulfilled their duties under the statute, courts consider how a prudent and loyal financial expert familiar with investment industry

AMENDED COMPLAINT - 6

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

practices and fees would have acted.  As explained below, here, a prudent and loyal financial expert would have acted very differently than did Defendants.

30.     Defendants failed to fulfill their duty to prudently and loyally control the Bundled RKA expenses paid by the Plan, and in so doing caused the Plan's participants to incur millions of dollars in unnecessary expenses.

**A.     ERISA's Fiduciary Standards in the Defined Contribution Industry**

31.     Unlike traditional defined benefit pension plans, which obligate employers to pay a particular amount at retirement (benefits that are guaranteed by the Pension Benefit Guarantee Corporation), participants in defined contribution plans (like the REI Plan) get no more at retirement than they have in their accounts at that time.

32.     As such, ERISA's fiduciary duty to ensure fees paid by the Plan are reasonable is especially important in the context of Plan fees paid by defined contribution plan participants, as the fees reduce dollar for dollar (and more, when compounded) the amount of benefits Plan participants will receive at retirement.

33.     As the Supreme Court explained in 2015, in defined contribution plans like the Plan, employees' benefits at retirement "are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, ***less expenses***." *Tibble*, 575 U.S. at 525 (emphasis added).

34.     Over time, even small differences in fees and performance compound and can result in vast differences in the amount of savings available at retirement -- "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Id*. In the context of individual account defined contribution plans, additional fees of only 1% can have a large effect on investment results over time because

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

"[b]eneficiaries subject to higher fees … lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble*, 843 F.3d at 1190.

35.    Seemingly small differences in fees can lead to vastly different outcomes at retirement. For example, a 1% difference in fees can mean 28% less in retirement assets over a thirty-five-year period, U.S. Dept. of Labor, A Look at 401(k) Plan Fees, (August 2013) at 1-2, *https://www.dol.gov/ebsa/publications/401k_employee.html*. Therefore, fees are of critical importance to an ERISA fiduciary's prudent investment menu selection.

36.    As such, plan fiduciaries like Defendants here must: (1) establish a prudent process for selecting service providers and reviewing investments; (2) ensure that fees paid to service providers are reasonable and non-discriminatory in light of the level and quality of services provided; and (3) monitor service providers and investments once selected to make sure they continue to be prudent choices.

### B.    Bundled Recordkeeping and Administrative ("Bundled RKA") Services and Fees

37.    Defined contribution plan fiduciaries of massive 401(k) plans, like the REI Plan, hire service providers to deliver a retirement plan benefit to their employees. There is a group of national retirement plan services providers commonly and generically referred to as "recordkeepers," that have developed bundled service offerings that can meet all the needs of massive retirement plans with a prudent and materially similar level and caliber set of Plan services. Schwab is one of the largest of such recordkeepers.

38.    There are numerous recordkeepers in the marketplace who are equally capable of providing a high level of service to very large defined contribution plans like the REI Plan.

39.    The cost of RKA services depends mostly on the number of Plan participants, and

AMENDED COMPLAINT - 8

less so on the amount of assets in the plan.

40.    Because the cost of recordkeeping services depends primarily on the number of participants, and not on the amount of assets in the participant's account, the cost of providing recordkeeping services to a participant with a $100,000 account balance is the same for a participant with $1,000 in her retirement account.

41.    There are at least three types of RKA services provided by all recordkeepers and other service providers to massive plans like the REI Plan.

42.    The first type, "Bundled RKA," also referred to as "Plan Administration Fees," may include some or all of the following services:

a.    Recordkeeping;

b.    Transaction Processing (which includes the technology to process purchases and sales of participants' assets as well as providing the participants the access to investment options selected by the plan sponsor);

c.    Administrative Services related to converting a plan from one recordkeeper to another recordkeeper;

d.    Participant communications (including employee meetings, call centers/phone support, voice response systems, web account access, and the preparation of other communications to participants, e.g., Summary Plan descriptions and other participant materials);

e.    Maintenance of an employer stock fund;

f.    Plan Document Services which include updates to standard plan documents to ensure compliance with new regulatory and legal requirements;

g.    Plan consulting services including assistance in selecting the investments offered to participants;

h.    Plan professional services including accounting, audit, appraisal, and legal services (though these services may be paid separately outside of Bundled RKA);

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

  i.  Compliance support which would include, e.g., assistance interpreting plan provisions and ensuring the operation of the plan follows legal requirements and the provisions of the plan;

  j.  Compliance testing to ensure the plan complies with Internal Revenue nondiscrimination rules; and

  k.  Trustee/custodian services.

43. These Bundled RKA services are fungible and commoditized, and are standard services provided by all major recordkeepers for massive ERISA 401(k) plans, like the REI Plan.

44. This does not mean all plans have identical RKA services, only that plans are provided the *same set of Bundled RKA services*, and can pick and choose among them like an all-you-can-eat buffet.

45. In other words, the Plan provided participants all the fungible and commoditized Bundled RKA services provided to all other very large 401(k) plan participants. The quality or type of Bundled RKA services provided by competitor recordkeepers are comparable to that provided by Schwab. Any differences in Bundled RKA services are immaterial to the price quoted by recordkeepers other service providers for such services.

46. According to the REI Plan Participant Fee Disclosures from 2018 through 2024 ("Section 404(a)(5) notices"), "Plan administrative fees may include those expenses related to the administration of the plan such as record keeping, legal, accounting, trustee, and other expenses."

47. For 2018 through 2024, "[t]he total annual per capita Plan Administrative fee for trust, custody, and recordkeeping services [was] $38." However, "[t]he total Plan Administrative fee is then deducted from the Plan by dividing the fees evenly across participant accounts that are *at least $5,000 on a per capita basis*. Trust, custody, and recordkeeping fees are applied quarterly." (emphasis added).

AMENDED COMPLAINT - 10

**C.     The Bundled RKA Services are the Same Set of Services as all the Comparator Plans**

48.     The services listed in the Plan's Fee Disclosures are basic Bundled RKA services and establish that REI had the *same set of services* (not identical) as all the comparator plans discussed in more detail below.

49.     In other words, there is nothing in Plan's Fee Disclosures to suggest that there is anything exceptional, unusual, or customized, about the Bundled RKA services provided to the REI Plan participants by Schwab.

50.     This action focuses only on ***Plan Bundled RKA fees paid to Schwab*** and related to recordkeeping services, including recordkeeping services (code 15), undisclosed direct payments from the plan (code 50), and recordkeeping fees (Code 64), as outlined in Schedule C of the 2018-2023 Department of Labor ("DOL") 5500 Forms filed by the REI Plan fiduciaries.

51.     Although comparator plans, may use different service codes on their 5500 Forms than the REI Plan, as the Third Circuit recently observed in *Mator v. Wesco Distrib, Inc.*, "the different service codes do not undermine the [plan] comparisons because they apparently overlap." All of the plans list either "'Recordkeeping fees,' 'Recordkeeping and information management (computing, tabulating, data processing),' or both." *See id.*, 102 F.4th 172, 186 (3d Cir. 2024).

52.     Here, the same is true with regard to the REI Plan and comparator plans for 2018-2023 with regard to both asset size and participant size. Each list recordkeeping fees (Code 64), "Recordkeeping and information management (computing, tabulating, data processing) (Code 15), or both," just as in *Mator*.

AMENDED COMPLAINT - 11

53.     Consequently, the Bundled RKA analysis focused on recordkeeping (Codes 15 and 64) provided by Schwab is an appropriate method to make an apples-to-apples comparison, and then infer a flawed fiduciary process from the disparity in RKA fees.

54.     This analysis provides an apples-to-apples comparison because all Bundled RKA fees from the comparator plans include recordkeeping, administration and trustee/custodial services – even if some just use "recordkeeping" as the terminology in the participant disclosure.

55.     In short, "[a]t this stage, the record does not reveal the codes' precise meanings, nor whether all plans define the codes consistently. But given that all the plans received some portion of an overlapping constellation of recordkeeping services, the comparisons help nudge the [plaintiffs'] claims across the line from possible to plausible." *Mator*, 102 F.4th at 186.

56.     The REI Plan provided participants all the commoditized and fungible Bundled RKA services provided to all other massive 401(k) plan participants. The quality or type of RKA services provided by competitor recordkeepers are comparable to that provided by Schwab to the REI Plan.

57.     Any differences in these Bundled RKA services are immaterial to the price quoted by recordkeepers for such Bundled RKA services.

58.     Industry experts have maintained for years that for very large retirement plans like the Plan, prudent fiduciaries treat Bundled RKA services as a commodity with little variation in price. "Custody and recordkeeping are 'commodity' services. Like any commodity, given equal quality, the key benchmark for these services is price. The cheaper you can find competent custody and recordkeeping services, the better for participants." Eric Droblyen, *Evaluating 401(k) Providers: Separating Commodity from Value-Added Services*,

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

https://www.employeefiduciary.com/blog/evaluating-401k-providers-separating-commodity-value-added-services.

59.    Because Bundled RKA services are commoditized, recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for very large plans like the Plan.

60.    Given the very large size of the REI Plan, the price paid by the Plan for Bundled RKA services to Schwab, and the trend of price compression for Bundled RKA services over the last six years for Bundled RKA service, it is possible to infer that Defendants did not engage in any effective competitive solicitation of Bundled RKA service bids during the Class Period.

61.    The second type of essential RKA services, hereafter referred to as "A La Carte services," provided by all recordkeepers, often have separate, additional fees based on the conduct of individual participants and the usage of the service by individual participants. These "A La Carte RKA" services typically include the following:

   a.    Loan processing;

   b.    Brokerage services/account maintenance;

   c.    Distribution services; and

   d.    Processing of Qualified Domestic Relations Orders (QDROs).

62.    These fees are included in all RFPs for recordkeeping that plans undertake, but only make up a small amount of the Total RKA fee and these fees are treated separately on Fee Disclosures under ERISA Section 404(a)(5), and not included for REI or the comparator plans for this analysis.

AMENDED COMPLAINT - 13

63.     The third type of RKA fees are Ad Hoc fees which are transaction fees and other administrative fees, and include such things as ESOP fees, fees for service, and terminated maintenance fees.

64.     Again, Ad Hoc fees are treated separately on Fee Disclosures under ERISA Section 404(a)(5), and not included for REI or the comparator plans for this analysis.

65.     Bundled RKA fee numbers represent the best methodology for determining apples-to-apples comparisons of plans as far as what is being charged to plan participants for Bundled RKA, as A La Carte, and Ad Hoc Fees are negligible in comparison.

66.     Because the Bundled RKA offerings are fungible among all recordkeepers who provide services to massive plans, like the REI Plan, it is the standard and prevailing practice for retirement plan consultants and advisors to request quotes by asking what the "revenue requirement" is on a per participant basis for providing the Bundled RKA services.

67.     This approach is validated by the structure of the RFPs sent out by retirement plan consultants and advisors and the responses provided by the recordkeepers and other service providers and then the summary of the evaluations created by the retirement plan consultants and advisors.

68.     Fidelity, the largest 401k recordkeeper in the country and a direct competitor of Schwab, has in fact conceded in another recent case that the Bundled RKA services that it provides to very large plans are commodified, including the plan services provided to its own employees.

69.     As part of stipulated facts in a previous case, Fidelity stated: "The value of the recordkeeping services that Fidelity provided to the Plan in 2014 was $21 per participant; the value of the recordkeeping services that Fidelity provided to the Plan in 2015 and 2016 was $17 per participant, per year, and the value of the recordkeeping services that Fidelity has provided to the

AMENDED COMPLAINT - 14

Plan since January 1, 2017 is $14 per participant, per year. Had the Plan been a third-party plan that negotiated a fixed fee for recordkeeping services at arm's length with Fidelity it could have obtained recordkeeping services for these amounts during these periods. *The Plan did not receive any broader or more valuable recordkeeping services from Fidelity than the services received by any other Fidelity-record kept plan with at least $1 billion in assets during the Class Period (November 18, 2014 to the present).*" *See Moitoso v. FMR LLC, et al.*, 1:18-CV-12122-WGY, Stipulation of Facts, Dkt. 128-67, at 4-5 (D. Mass. Sep. 6, 2019) (emphasis added).

70.    By the start of, and during the entire Class Period, the level of fees that recordkeepers and other service providers have been willing to accept for providing Bundled RKA has stabilized, and has not materially changed for very large plans, including the REI Plan.

71.    The investment options selected by plan fiduciaries also often have a portion of the total expense ratio allocated to the provision of recordkeeping performed by the recordkeepers on behalf of the investment manager.

72.    Recordkeepers often collect a portion of the total expense ratio fee of the mutual fund in exchange for providing services that would otherwise have to be provided by the mutual fund. These fees are known as "revenue sharing" or "indirect compensation."

73.    The Plan paid both direct and indirect RKA fees during the Class Period to Schwab.

74.    The comparator plans either paid direct and indirect RKA fees or only direct RKA fees, but either way, the same methodology was utilized, and indirect compensation was taken into consideration for both the Plan and the comparator plans.

**D.    Standard of Care for Prudent Fiduciaries Selecting & Monitoring Retirement Plan Service Providers**

75.    Prudent plan fiduciaries ensure they are paying only reasonable fees for Bundled RKA by engaging in an "independent evaluation," see *Hughes v. Northwestern Univ.*, 142 S. Ct.

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

737, 742 (2022), and soliciting competitive bids from other recordkeepers to perform the same level and quality of services currently being provided to the Plan.

76.    Prudent plan fiduciaries can easily receive a quote from other RKA providers to determine if the current level of Bundled RKA fees is reasonable in light of the level and quality of Bundled RKA fees. It is not a cumbersome or expensive process.

77.    It is the standard of care prevailing among industry experts to solicit competitive bids every three to five years. *See* CAPTRUST, *Understanding and Evaluating Retirement Plan Fees | Part One: A Holistic Approach*, https://www.captrust.com/understanding-and-evaluating-retirement-plan-fees-part-one-a-holistic-approach/.

78.    "Recordkeeping and administrative fees should be evaluated and compared to plans of similar size and type that are receiving analogous services. While each plan is unique—making an apples-to-apples comparison imperfect—evaluating fees against similarly situated and sized plans provides a good reference point in helping to determine if plan fees are reasonable." *Id.*

79.    "Give all of [bidding recordkeepers] complete and identical information about your plan and the features you want so that you can make a meaningful comparison. This information should include the *number of plan participants and the amount of plan assets as of a specified date*.") *See, e.g.,* U.S. DEPARTMENT OF LABOR, *Understanding Retirement Plan Fees and Expenses*, at 6, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/understanding-retirement-plan-fees-and-expenses.pdf (last visited October 31, 2024) (emphasis added).

80.    Having received bids, prudent plan fiduciaries can negotiate with their current RKA providers for a lower fee or move to a new RKA provider to provide a materially similar level and qualities of services for a more competitive reasonable fee if necessary.

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

81.    An internal benchmarking survey from CapTrust, Fiduciary Decisions, or similar benchmarking service providers, is inadequate to determine a reasonable Bundled RKA fee. Such surveys skew to higher "average prices," that favor inflated Bundled RKA fees. To receive a "reasonable" Bundled RKA fee in the prevailing market, prudent plan fiduciaries engage in solicitations of competitive bids on a periodic basis.

82.    The best way to determine the *reasonable*, as opposed to the *cheapest* or *average*, market price for a given quality and level of RKA services is to obtain competitive bids from other providers in the market. *Hughes v. Northwestern Univ.*, 63 F.4th 615, 625-626 (7th Cir. 2023) ("*Hughes II*") (although "a fiduciary *need not constantly solicit quotes* for recordkeeping services to comply with its duty of prudence...fiduciaries who fail to monitor the reasonableness of plan fees and *fail to take action to mitigate excessive fees — such as by* adjusting fee arrangements, *soliciting bids*, consolidating recordkeepers, negotiating for rebates with existing recordkeepers, or other means — may violate their duty of prudence.").

**E.    The REI Plan's Bundled RKA Fees Were Discriminatory and Too High**

83.    Every defined contribution plan requires recordkeeping.  There are numerous vendors that can provide high quality recordkeeping services to defined contribution plans such as the REI Plan. These vendors strenuously compete against each other by offering the lowest price for the best service.

84.    A plan fiduciary must monitor its Bundled RKA fees on an ongoing basis by regularly conducting an independent evaluation of those fee to ensure they are reasonable and remove or renegotiate with RKA providers if those fees are unreasonable. *See Hughes*, 142 S. Ct. at 742.

AMENDED COMPLAINT - 17

85.     Defendants, as the Plan's fiduciaries, selected the RKA service providers for the Plan and controlled which investment options and investment vehicles were available in the Plan. Defendants were responsible for monitoring those service providers, and the fees they charged, on an ongoing basis.

86.     Very large plans are generally able to leverage their size to obtain lower fees per participant, in part because of the economies of scale that large plans provide recordkeepers.

87.     With almost 25,000 participants and over one billion dollars in assets during the Class Period, the Plan is one of the largest defined contribution plans in the United States.

88.     The Plan thus had enormous bargaining power to obtain and maintain very low fees for Bundled RKA services and had significant leverage to procure high quality management and administrative services at a low cost.

89.     Defendants failed to leverage the Plan's size to obtain reasonable and non-discriminatory Bundled RKA fees.

90.     During the Class Period, Defendants egregiously failed to regularly monitor the Plan's Bundled RKA fees paid to Schwab.

91.     During the Class Period, Defendants failed to regularly solicit quotes and/or competitive bids from RKA providers, including but not limited to Schwab, in order to avoid paying unreasonable Bundled RKA fees.

92.     During the Class Period, and unlike a hypothetical prudent fiduciary, Defendants followed a fiduciary process that was ineffective given the objectively unreasonable and discriminatory Bundled RKA fees it paid to Schwab for at least six years, and in light of the level and quality of Bundled RKA services it received that were materially similar and fungible services available through other RKA providers and provided to other massive plans.

AMENDED COMPLAINT - 18

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

93.    The Plan participant fee disclosure indicates the total annual per capita Plan Administrative fee for trust, custody and recordkeeping services should have been only $38 per participant.

94.    The Plan participant fee disclosure, however, further describes how the actual amount charged to participants is unknown and will fluctuate based on being divided evenly across participants accounts that have more than $5,000.

95.    The Plan Committee discriminatorily, and without reason, allocated the Bundled RKA fees only to those participants with balances greater than $5,000.

96.    The Plan Committee subsidized the participants with a balance less than $5,000 by requiring that participants with a balance greater than $5,000 pay for all Bundled RKA fees.

97.    Although plan sponsors have discretion in determining how to allocate plan fees and expenses, charging different fees to different group of participants runs afoul their duty of loyalty and prudence under ERISA.

98.    It is unreasonable and a violation of their fiduciary duty of loyalty and prudence to have higher-balance participants subsidize the cost of administration for the lower-balance participants.

99.    Under both DOL and IRS guidance, DOL Field Assistance Bulletin (FAB) 2003-3; Rev. Ruling 2004-10, charging high-balance participants unreasonably high RKA fees, as here, impairs their continued plan participation, and is prohibited under ERISA fiduciary standards. *See* Vanguard, *Slicing and dicing retirement plan fees: Allocation consideration for plan sponsors* 6 (December 2018).

AMENDED COMPLAINT - 19

100.    This conduct violates the Plan Committee's duty of loyalty to act in the best interest of those employees with account balances of greater than $5,000 by electing to make them pay the Bundled RKA costs for another set of Plan participants.

101.    The only proper way to alleviate costs to participants below a certain asset threshold, consistent with fiduciary duties, is for a company/plan sponsor to pay the RKA costs rather than have the Plan Committee shift them in a discriminatory fashion to participants who have higher balances.

102.    Assuming that $38/per participant is the reasonable fee for the REI Plan, then it would be inappropriate to make any one Plan participant pay more than $38/pp.

103.    $38 per participant is a reasonable fee for Bundled RKA for the REI Plan because that is exactly what Schwab has agreed to be paid for Bundled RKA service over the last six years and that rate would have applied to *all Plan participants* had the Plan Committee not made a separate, arbitrary, and discriminatory allocation decision to shift costs for participants under $5,000 balance to those with more than a $5,000 account balance.

104.    There was not a reasonable fiduciary process for separating the Plan participants by account balance and no indication of  what made the specific amount of $5,000 in account balance a reasonable basis for the distinction.

105.    The Plan Committee never calculated and discuss the estimated amount that would be paid by all participants over $5,000 for Bundled RKA fees as a result of this discriminatory fee structure.

106.    As a result of these imprudent and disloyal decisions with regard to Bundled RKA fees, Plan participants with a balance greater than $5,000 were charged roughly double the actual fee that Schwab needed to provide trust, custody and recordkeeping services.

AMENDED COMPLAINT - 20

107.     Of the 24,800 Plan participants in 2023, there were approximately 12,040 that had account balances of greater than $5,000 in 2023.

108.     Participants with balances greater than $5,000 were charged $78 per year on average which is $40 more than their fair share of $38 per participant. The following calculations are based on the number of participants with a balance greater than $5,000.  The REI Plan's total number of participants is actually about double the number of participants shown in the following exhibit:

### Bundled Recordkeeping and Administration (Bundled RKA) Fees

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Average |
|---|---|---|---|---|---|---|---|
| Estimated Participants > $5k | 8,044 | 8,843 | 9,053 | 9,861 | 10,481 | 12,040 | 9,720 |
| Est. Bundled RKA Fees | $614,498 | $668,610 | $693,880 | $756,466 | $859,256 | $942,400 | $755,852 |
| Est. Bundled RKA Per Participant | $76 | $76 | $77 | $77 | $82 | $78 | $78 |

### Bundled Recordkeeping and Administration (Bundled RKA) Fees

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Average |
|---|---|---|---|---|---|---|---|
| Estimated Participants > $5k | 8,044 | 8,843 | 9,053 | 9,861 | 10,481 | 12,040 | 9,720 |
| Est. Bundled RKA Fees | $614,498 | $668,610 | $693,880 | $756,466 | $859,256 | $942,400 | $755,852 |
| Est. Bundled RKA Per Participant | $76 | $76 | $77 | $77 | $82 | $78 | $78 |
| Reliable Est. of Reasonable Bundled RKA Fees | $305,680 | $336,029 | $343,998 | $374,732 | $398,289 | $457,534 | $369,377 |
| Reliable Est. of Reasonable Bundled RKA Fees Per PP | $38 | $38 | $38 | $38 | $38 | $38 | $38 |
| Est. Bundled RKA Losses | $308,818 | $332,581 | $349,882 | $381,734 | $460,967 | $484,866 | $386,475 |
| Est. Bundled RKA Losses Per PP | $38 | $38 | $39 | $39 | $44 | $40 | $40 |
| Excessive Fee Multiple | 201% | 199% | 202% | 202% | 216% | 206% | 205% |

109.     During the entirety of the Class Period, a hypothetical prudent plan fiduciary would not agree to pay *an over 105% premium* for what they could otherwise pay for the materially similar level and quality of Bundled RKA services for participants with balances greater than $5,000.

110.     The Bundled RKA fees paid by the Plan to Schwab for participants with more than $5,000 in account balances during the Class Period were excessive relative to the Bundled RKA services rendered given the commoditized and fungible nature of Bundled RKA fees for massive plans like the REI Plan.

AMENDED COMPLAINT - 21

111.    From the years 2018 through 2023, and based upon information derived from the Plan participant disclosure forms, the Plan additionally cost its participants with more than $5,000 in account balances on average approximately **$2,697,860**, which equates to, on average, approximately $40 per participant with more than $5,000 in account balances per year:

### Bundled Recordkeeping and Administration (Bundled RKA) Fees

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| RKA Direct Compensation | $614,498 | $668,610 | $693,880 | $756,466 | $859,256 | $942,400 |
| Est. Conservative RKA Indirect Compensation | $0 | $0 | $0 | $0 | $0 | $0 |
| Est. Conservative Administrative Credit to Plan | $0 | $0 | $0 | $0 | $0 | $0 |
| Est. Conservative Bundled RKA Fees | $614,498 | $668,610 | $693,880 | $756,466 | $859,256 | $942,400 |
| | | | | | | |
| Reasonable Bundled RKA Fees | $305,680 | $336,029 | $343,998 | $374,732 | $398,289 | $457,534 |
| | | | | | | |
| Est. Conservative Bundled RKA Losses | $308,818 | $332,581 | $349,882 | $381,734 | $460,967 | $484,866 |
| Compounding Percentage (Plan Return) | | 21.76% | 15.36% | 14.15% | -18.13% | 18.69% |
| Est. Conservative Cumulative Bundled RKA Losses | $308,818 | $708,612 | $1,167,329 | $1,714,282 | $1,864,462 | $2,697,860 |

112.    Defendants could have received Bundled RKA services during the Class Period of the same level and quality from Schwab that provide Bundled RKA services to massive plans, like the REI Plan, because the participant fee disclosures establish that the REI Plan received no services that were materially different than the fungible and commoditized services received by all comparable plans.

113.    Defendants failed to take advantage of the REI Plan's massive size to timely negotiate lower fees from Schwab or any other service provider during the class period.

114.    Defendants did not conduct effective or competitive bidding for Bundled RKA services during the Class Period, and failed to use the Plan's enormous size to negotiate rebates from Schwab.

115.    During the entirety of the Class Period, and by failing to recognize that the REI Plan and its participants were being charged excessive Bundled RKA fees and by failing to take

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

effective remedial actions, Defendants breached their fiduciary duty of prudence to Plaintiffs and to other Plan participants, causing millions of dollars of harm to Plaintiffs and Class Member's retirement accounts.

116.    High-balance participants discriminatorily subsidized the costs of administration for the low-balance participants and pay additional unreasonable Total RKA fees.

117.    By charging high-balance participants unreasonably high Bundled RKA fees, Defendants impaired their continued plan participation, in violation of their fiduciary duties of prudence and loyalty under ERISA to high-balance participants.

118.    Plaintiffs and Class Members paid all of these excessive and discriminatory Bundled RKA fees in the form of direct and indirect compensation to the Plan and suffered injuries to their Plan accounts as a result.

## CLASS ACTION ALLEGATIONS

119.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1), or, in the alternative, Fed. R. Civ. P. 23(b)(2), on behalf of the following Class:

> All participants in and beneficiaries of the Recreational and Equipment Inc. Retirement and Profit Sharing Plan, who had account balances of $5,000 or greater, at any time from the earlier of (i) six years before the filing of this action, or (ii), in the event the Court determines that Defendants have concealed the facts and circumstances that would have apprised Plaintiffs and the Class of the existence of Defendants' breaches through the date of judgment.

120.    The members of Class are so numerous that joinder of all members is impracticable. At all relevant times, the number of Class members was approximately 12,000 or more.

121.    Common questions of law and fact exist as to all members of the Class.  Among such questions are:

    i.    Whether Defendants are fiduciaries with respect to the administration, management and supervision of the REI Plan;

AMENDED COMPLAINT - 23

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

ii.     Whether Defendants breached their fiduciary duties in how they allocated and paid for Bundled RKA fees; and,

iii.    Whether Defendants' breaches of fiduciary duties caused losses to the Plan and its participants, and if so, in what amounts.

122.    Plaintiffs' claims are typical of the claims of the Class pursuant to Fed. R. Civ. P. 23(a)(3), because Plaintiffs were participants during the time period at issue and all participants in the Plan with greater than $5,000 account balances were harmed by Defendants' breaches of fiduciary conduct.

123.    Plaintiffs will adequately represent the Class pursuant to Fed. R. Civ. P. 23(a)(4), because they were participants in the Plan during the Class Period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

124.    Class certification of Plaintiffs' claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

125.    In the alternative, certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

126.    Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

127.    The claims brought by the Plaintiffs arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts.

128.    The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

129.    Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

130.    Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

131.    Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Breach of Duties of Loyalty and Prudence Under ERISA, as Amended**
**(Plaintiffs, on Behalf of Themselves and Class,**
**Against Defendant Plan Committee – Bundled RKA Fees)**

132.    Plaintiffs restate the above allegations as if fully set forth herein.

133.    Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

134.    29 U.S.C. § 1104(a)(1)(B) imposes a fiduciary duty of prudence upon Defendants in its administration of the Plan.

AMENDED COMPLAINT - 25

135.    Defendants, as fiduciaries of the Plan, are responsible for selecting a recordkeeper that charges reasonable and non-discriminatory Bundled RKA fees.

136.    During the Class Period, Defendants had a fiduciary duty to do all of the following: ensure that the Plan's Bundled RKA fees were reasonable and non-discriminatory; defray reasonable expenses of administering the Plan; and act with the loyalty, care, skill, diligence, and prudence required by ERISA.

137.    During the Class Period, Defendants breached their fiduciary duty of prudence to Plan participants, including to Plaintiffs, by failing to: ensure that the Plan's Bundled RKA fees were reasonable and non-discriminatory for those with account balances greater than $5,000, defray reasonable expenses of administering the Plan, and act with the loyalty, care, skill, diligence, and prudence required by ERISA.

138.    During the Class Period, Defendants further had a continuing duty to regularly monitor and evaluate the Plan's recordkeeper, Schwab, to make sure it was providing the Bundled RKA services at reasonable and non-discriminatory cost, given the highly competitive, commodified and fungible market surrounding recordkeeping and the enormous bargaining power the Plan had to negotiate the best fees, and remove Schwab if it provided RKA services at objectively unreasonable and discriminatory fee levels.

139.    During the Class Period, Defendants breached their duty to Plan participants, including to Plaintiffs, by failing to employ a prudent process and by failing to evaluate the cost of the Plan's recordkeeper critically or objectively in comparison to other recordkeeper options.

140.    Defendants, with regard to participants with account balances greater than $5,000, failed to discharge its duties with respect to the Plan for the exclusive purpose of providing benefits to participants and their beneficiaries, breaching their duties under 29 U.S.C. § 1104(a)(1)(A).

AMENDED COMPLAINT - 26

141.    Defendants, with regard to participants with account balances greater than $5,000, violated their duties of loyalty and prudence by charging them unreasonable Bundled RKA fees and by having them subsidize the cost of administration for lower-balance Participants.

142.    Defendants failed to discharge its duties with respect to the Plan with the loyalty, care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

143.    As a result of Defendants' breach of their fiduciary duties of prudence and loyalty with respect to the Plan, the Plaintiffs and Plan participants suffered millions of dollars in unreasonable and unnecessary monetary losses.

144.    Defendants are liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the REI Plan the losses resulting from the breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. In addition, Defendants are subject to other equitable relief as set forth in the Prayer for Relief.

### SECOND CLAIM FOR RELIEF
**Failure to Adequately Monitor Other
Fiduciaries under ERISA, as Amended
(Plaintiffs, on Behalf of Themselves and Class, Against
Defendants REI and Board – Bundled RKA Fees)**

145.    Plaintiffs restate the above allegations as if fully set forth herein.

146.    Defendants REI and Board had the authority to appoint and remove members or individuals responsible for Plan Bundled RKA fees and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

AMENDED COMPLAINT - 27

147.    In light of this authority, Defendants REI and Board had a duty to monitor those individuals responsible for Plan Bundled RKA fees to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

148.    Defendants REI and Board had a duty to ensure that the individuals responsible for Plan Bundled RKA fees possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's Bundled RKA fees; and reported regularly to Defendants.

149.    The unreasonable and discriminatory Bundled RKA fees paid by the Plan inferentially establish that Defendants REI and Board breached their duty to monitor by, among other things:

(a)    Failing to monitor and evaluate the performance of individuals responsible for Plan Bundled RKA fees or have a system in place for doing so, standing idly by as the Plan suffered significant losses in the form of unreasonable and discriminatory Bundled RKA expenses;

(b)    Failing to monitor the process by which the Plan's recordkeeper, Schwab, was evaluated and failing to investigate the availability of more reasonably-priced and less-discriminatory recordkeepers; and

(c)    Failing to remove individuals responsible for Plan Bundled RKA fees whose performance was inadequate in that these individuals continued to pay the same Bundled RKA fees over numerous years even though solicitation of competitive bids would have shown that maintaining Schwab as the recordkeeper at the contracted price was imprudent, discriminatory, and excessively costly, all to the detriment of the Plaintiffs' and other Plan participants' retirement savings.

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

150.    As the consequences of the breaches of the duty to monitor for Bundled RKA fees the Plaintiffs and Plan participants suffered millions of dollars of objectively unreasonable monetary losses.

151.    Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendants REI and Board are liable to restore to the REI Plan all losses caused by their failure to adequately monitor individuals responsible for Plan Bundled RKA fees. In addition, Plaintiffs and the Class are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered and requests the following relief:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A Declaration the Defendants are fiduciaries, have breached their fiduciary duties under ERISA, and engaged in prohibited transactions, causing harm to Plan participants and beneficiaries;

D.    An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breach of fiduciary duties, including restoring to the Plan all losses resulting from excessive Bundled RKA fees, and restoring to the Plan all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the Participants would have had in the absence of these fiduciary breaches;

E.    An Order requiring REI to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for

AMENDED COMPLAINT - 29

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696

profits, imposition of constructive trust, or surcharge against REI as necessary to effectuate relief, and to prevent REI's unjust enrichment;

       F.      An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties;

       G.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary/consultant or fiduciaries to run the Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties;

       H.      An award of pre-judgment interest;

       I.      An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

       J.      Such other and further relief as the Court deems equitable and just.

Dated: April 3, 2025                    Respectfully submitted,

**DEBOFSKY LAW, LTD.**

*/s/ Marie E. Casciari*
Marie E. Casciari (WSBA # 58223)
3101 Western Ave, Suite 350
Seattle, WA 98121
Telephone: 206-333-2696
Facsimile: (312) 600-4426
Email: mcasciari@debofsky.com

**WALCHESKE & LUZI, LLC**

Paul M. Secunda*
(*pro hac vice* admission pending
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
Facsimile: (262) 565-6469
Email: psecunda@walcheskeluzi.com

1

*Attorneys for Plaintiffs and Proposed*
*Class*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED COMPLAINT - 31

DeBofsky Law, Ltd.
3101 Western Avenue, Suite 350
Seattle, WA 98121
206-333-2696