1

THE HONORABLE TIFFANY M. CARTWRIGHT

2

3

4

5

6

7

UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10  | MACY SMITH AND SALLY JOHNSON, individually, and as representatives of a Class of Participants and Beneficiaries of the Recreation and Equipment, Inc. Retirement and Profit Sharing Plan,

Case No. 3:24-cv-06032-TMC

11

12

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

13

Plaintiff,

NOTE ON MOTION CALENDAR:
June 27, 2025

14

v.

15

*ORAL ARGUMENT REQUESTED*

16  RECREATIONAL EQUIPMENT, INC.;
BOARD OF DIRECTORS OF
RECREATIONAL EQUIPMENT, INC; and
RETIREMENT PLAN COMMITTEE OF
RECREATIONAL EQUIPMENT, INC.,

17

18

19

Defendants.

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................ 3

III.  PLAINTIFFS' CLAIMS. ............................................................................................. 6

IV.  LEGAL STANDARD ................................................................................................... 7

V.  ARGUMENT ................................................................................................................ 8

    A.  REGULATORY GUIDANCE REGARDING ALLOCATION OF RECORDKEEPING FEES. ................................................................................... 8

    B.  THE SETTLOR DOCTRINE BARS PLAINTIFFS' CLAIMS. ........................... 9

    C.  PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THE METHOD FOR ALLOCATING FEES IS A FIDUCIARY BREACH. ........................................ 11

        1.  THE COMMITTEE WOULD VIOLATE ITS FIDUCIARY OBLIGATIONS IF IT FAILED TO FOLLOW THE ALLOCATION METHODOLOGY SET FORTH IN THE PLAN. ....... 11

        2.  PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THE COMMITTEE ACTED IMPRUDENTLY. .............................................. 13

        3.  PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THE COMMITTEE ACTED DISLOYALLY. ................................................. 17

    D.  PLAINTIFFS DO NOT PLAUSIBLY ALLEGE A LOSS TO THE PLAN. ................................................................................................................... 18

    E.  PLAINTIFFS DO NOT STATE A FAILURE-TO-MONITOR CLAIM. ........... 19

VI.  CONCLUSION ............................................................................................................ 19

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT
(Case No. 3:24-cv-06032-TMC)

i

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Alessi v. Raybestos-Manhattan, Inc.*,
   451 U.S. 504 (1981)............................................................................................................10

5

6

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   579 F. Supp. 3d 1133 (N.D. Cal. 2022), *appeal pending*, No. 22-16268 (9th
   Cir.)........................................................................................................................................4

7

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................7

9

10

*Bafford v. Northrop Grumman Corp.*,
   994 F.3d 1020 (9th Cir. 2021) ..............................................................................................9

11

12

*Beldock v. Microsoft Corp.*,
   2023 WL 1798171 (W.D. Wash. Feb. 7, 2023)...............................................................17, 19

13

*Bracalente v. Cisco Sys.*,.
   2024 WL 2274523 (N.D. Cal. May 20, 2024).......................................................................13

14

*Brock v. Robbins*,
   830 F.2d 640 (7th Cir. 1987) ..............................................................................................18

15

16

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995)..........................................................................................................3, 13

17

18

*Depot, Inc. v. Caring for Montanans*,
   915 F.3d 643 (9th Cir. 2019) ................................................................................................7

19

20

*Dimou v. Thermo Fisher Sci. Inc.*,
   2024 WL 4508450 (S.D. Cal. Sept. 9, 2024).......................................................................17

21

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)..........................................................................................................3, 7

22

23

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009), *abrogated on other grounds by Hughes*, 595
   U.S. 170 ..............................................................................................................................16

24

25

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)..........................................................................................................2, 9

26

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT
(Case No. 3:24-cv-06032-TMC)

i

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022)............................................................................................................2, 14

*Hutchins v. HP Inc.*,
2025 WL 404594 (N.D. Cal. Feb. 5, 2025), *appeal pending*, No. 25-826 (Feb
07, 2025) ....................................................................................................................... *passim*

*Hutchins v. HP Inc.*,
737 F. Supp. 3d 851 (N.D. Cal. 2024) ..................................................................................16

*Johnson v. Providence Health & Servs.*,
2018 WL 1427421 (W.D. Wash. Mar. 22, 2018) ................................................................4, 8

*Krieger v. Nationwide Mut. Ins. Co.*,
2012 WL 1029526 (D. Ariz. Mar. 27, 2012) .......................................................................10

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248 (2008)..............................................................................................................18

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996)..............................................................................................................10

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011), *abrogated on other grounds by Hughes*, 595
U.S. 170 ......................................................................................................................... *passim*

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985)........................................................................................................10, 18

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) ............................................................................................15

*Naylor v. BAE Sys., Inc.*,
2024 WL 4112322 (Sept. 5, 2024).............................................................................11, 12, 13

*Pegram v. Herdrich*,
530 U.S. 211 (2000)................................................................................................................9

*Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Execs.*,
182 F. Supp. 3d 573 (E.D. Va. Apr. 26, 2016) .....................................................................12

*Santomenno v. Transamerica Life Ins. Co.*,
883 F.3d 833 (9th Cir. 2018) ...............................................................................................10

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983)................................................................................................................14

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT
(Case No. 3:24-cv-06032-TMC)

ii

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013).....................................................................................7, 8, 13, 18

*Thomson v. Caesars Holdings, Inc.*,
  661 F. Supp. 3d 1043 (D. Nev. Mar. 13, 2023) .........................................................17

*Tibble v. Edison Int'l*,
  2010 WL 2757153 (C.D. Cal. July 8, 2010), *abrogated on other grounds by Tibble v. Edison Int'l*, 575 U.S. 523 (2015)..............................................................16

*Tibble v. Edison Int'l*,
  729 F.3d 1110 (9th Cir. 2013), *rev'd on other grounds by Tibble v. Edison Int'l*, 575 U.S. 523 (2015)..............................................................................15

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013)..................................................................................................13

*White v. Chevron Corp.*,
  2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ..........................................................13

*White v. Chevron Corp.*,
  2017 WL 2352137 (N.D. Cal. May 31, 2017) *aff'd*, 752 F. App'x 453 (9th Cir. 2018) ...............................................................................................................18

*Wise v. Verizon Commc'ns, Inc.*,
  600 F.3d 1180 (9th Cir. 2010) ..................................................................................18

*Wright v. Or. Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) .........................................................................9, 12, 15

**Statutes**

29 U.S.C. § 1102(a)(1)..................................................................................................3

29 U.S.C. § 1104(a) .....................................................................................................6

29 U.S.C. § 1104(a)(1)(B) ..........................................................................................13

29 U.S.C. § 1104(a)(1)(D) .......................................................................................8, 12

29 U.S.C. §§ 1132(a)(2), 1109(a) ...............................................................................18

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT
(Case No. 3:24-cv-06032-TMC)

iii

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................1, 7

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT
(Case No. 3:24-cv-06032-TMC)

iv

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    Pursuant to Federal Rule of Civil Procedure 12(b)(6), Recreational Equipment, Inc.
2  ("REI"), the Board of Directors of Recreational Equipment, Inc. ("Board"), and the REI
3  Retirement Plan Committee ("Committee") (collectively, "Defendants") move to dismiss the
4  Amended Complaint ("Complaint," Dkt. 26) filed by Macy Smith and Sally Johnson ("Plaintiffs"),
5  former participants in the Recreational Equipment, Inc. Retirement and Profit Sharing Plan
6  ("Plan"). Plaintiffs allege Defendants violated the Employee Retirement Income Security Act
7  ("ERISA") by allocating the Plan's recordkeeping fees to Plan participants with account balances
8  of $5,000 or more. Plaintiffs do not assert plausible claims, and the Court should dismiss the
9  Complaint.

10  **I.    INTRODUCTION**

11    Plaintiffs originally claimed Defendants violated ERISA by using forfeited employer
12  contributions to offset REI's future profit-sharing contributions to the Plan, instead of using those
13  forfeitures to pay the Plan's administrative expenses. (Dkt. 1.) Defendants' motion to dismiss (Dkt.
14  20) established that claim was foreclosed by the terms of the Plan and otherwise failed as a matter
15  of law, so Plaintiffs have abandoned the theory altogether. Plaintiffs now rely on a different, novel
16  theory—Defendants violated ERISA's duties of prudence and loyalty by allocating the Plan's
17  recordkeeping fees only to participants with an account balance of $5,000 or more, even though
18  the *total* per participant fee was reasonable. The express terms of the Plan also preclude this theory,
19  which is contrary to Department of Labor ("DOL") guidance on permissible methodologies for
20  allocating fees and finds no support in the case law.

21    Every retirement plan requires administrative services to operate and incurs associated
22  costs. These typically include recordkeeping, accounting, legal, and trustee services. The fees for
23  these services commonly are paid by plan participants, as is the case here. During the putative
24  class period, the Plan's recordkeeper—Schwab Retirement Plan Services ("Schwab") through
25  November 6, 2024, and Voya Institutional Plan Services ("Voya") after that—charged an annual
26  per participant fee of $38 from 2017 through September 2022, then $35 through November 6,

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 1
(Case No. 3:24-cv-06032-TMC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

2024, then $33 through the present. The Plan states recordkeeping fees "*shall be charged*" to participants with an account balance of $5,000 or more, and that participants with a lower account balance will pay nothing for recordkeeping. Plaintiffs do not allege the negotiated per participant fee is excessive. Rather, they argue that the method for allocating fees violates ERISA's duties of prudence and loyalty. The Court should dismiss the Complaint for at least three reasons.

*First*, REI, as the Plan's sponsor, decides what Plan-related costs REI or the participants will bear. These plan design, or "settlor," decisions are not made in a fiduciary capacity and, therefore, are not subject to ERISA's fiduciary provisions. *E.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [the employer], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan."). Thus, while the Committee may negotiate and monitor the amount of recordkeeping fees, REI decided how to allocate those fees among the participants and made the allocation methodology a mandatory Plan term, stripping the Committee of any fiduciary obligations in that respect. The Complaint fails to state any claims as a result.

*Second*, Plaintiffs do not plausibly allege a fiduciary breach. Whether a fiduciary acted consistent with her duties requires a "context specific" analysis, recognizing that "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). Here, the Committee merely complied with the Plan's terms in allocating fees to participants with account balances of $5,000 or more. None of Plaintiffs' allegations suggest doing so was imprudent. Moreover, the DOL has opined that a method of allocating expenses is not disloyal merely because it "favors" one group of participants over another. Assuming any fiduciary discretion existed regarding fee allocation, assessing fees to participants with larger balances who were better situated to pay those fees is clearly within the "range of reasonable judgments" a fiduciary can make. Charging even a small annual fee has a disproportionate impact on a participant with an account balance of $500

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 2
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

compared to a participant with an account balance of $20,000 or $200,000.

**Third**, Plaintiffs do not plausibly allege a loss to the Plan, as they must. Plaintiffs concede the per participant fee was reasonable, yet they complain that the fee allocation harmed a subset of Plan participants. That is an individual "loss," not a Plan loss, and the Complaint fails for this reason as well.

**Fourth**, the Court should dismiss Plaintiffs' failure-to-monitor claim because it is derivative of, and falls with, their primary fiduciary breach claims.

## II. FACTUAL BACKGROUND

Plaintiffs are former employees of REI and former participants in the Plan. Compl. ¶¶ 8-9. REI is the Plan sponsor, *id.* ¶ 20, and the Committee is the Plan administrator. *Id.* ¶ 21. The Board allegedly had authority to appoint members of the Committee. *Id.* ¶ 146.

The Plan is a defined contribution, individual account plan under ERISA that helps REI employees save for retirement. Compl. ¶ 31; *see also* McMahan Decl., Ex. 1, Recreational Equipment, Inc. Retirement and Profit Sharing Plan, Amended and Restated Effective Jan. 1, 2015.[1] Each Plan participant has an individual account that is funded by his or her own elective contributions and REI's generous profit-sharing contributions. Compl. ¶ 31. A participant's retirement benefit is a combination of the amounts contributed to her account over time, any earnings (or losses) from the investments she selects, and any expenses deducted from her account. *Id.* ¶ 33.

Every 401(k) plan requires various administrative services to operate including

---

[1] Employee benefit plans subject to ERISA must be established pursuant to a written document. *See* 29 U.S.C. § 1102(a)(1); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). The Court may properly consider the Plan document (with amendments) (McMahan Decl., Ex. 1) in resolving REI's motion, as these documents form the basis for Plaintiffs' claims. *E.g.*, *Hutchins v. HP Inc.*, 2025 WL 404594, at *3 (N.D. Cal. Feb. 5, 2025) (*Hutchins II*), appeal pending, No. 25-826 (Feb 07, 2025).

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 3
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

recordkeeping services,[2] and incurs associated costs. Recordkeepers provide necessary services such as tracking participant account balances, providing account statements, and processing participant transactions. *Id.* Recordkeepers also "may offer a host of additional services, such as telephone voice-response systems, access to a customer service representative, educational seminars, retirement planning software, investment advice, electronic access to plan information, daily valuation, and online transactions." *Id.* "Generally the more services provided, the higher the fees." *Id.*

The plan sponsor can choose to pay recordkeeping costs, but most commonly they are paid by the plan.[3] *Id.* When paid directly by the plan, fees either are allocated among participants' individual accounts as a percentage charge against assets (*e.g.*, 0.05% of assets in each account), also known as the "pro rata" method, or as a flat per participant fee, also known as the "per capita" method. *Id.*; *see also* McMahan Decl., Ex. 3, DOL Employee Benefits Security Administration ("EBSA") Field Assistance Bulletin 2003-03 ("FAB 2003-03").[4]

Schwab was the Plan's recordkeeper during most of the putative class period. Compl. ¶ 23. Voya replaced Schwab as recordkeeper in November 2024. *See* McMahan Decl., Ex. 4, Nov. 8, 2024, Fee and Investment Notice.[5] Schwab charged a per-participant fee of $38 through 2022, then

---

[2] McMahan Decl., Ex. 2, Dep't of Labor, *Understanding Retirement Plan Fees and Expenses*, at 2 (Sept. 2021). The Court can consider this exhibit because it is a public government document on the U.S. Department of Labor's website, its authenticity is undisputed, and it is incorporated into the Complaint. *See, e.g.*, *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1145 (N.D. Cal. 2022), *appeal pending*, No. 22-16268 (9th Cir.); Compl. ¶ 79.

[3] Participants also may pay individualized fees for services like loans. McMahan Decl., Ex. 2. Those fees are not at issue in the Complaint.

[4] The Court can consider Exhibit 4 because it is incorporated into the Complaint. Compl. ¶ 99. The EBSA is a division of the DOL. EBSA is "responsible for administering and enforcing the fiduciary, reporting, and disclosure provisions of Title I" of ERISA. https://www.dol.gov/agencies /ebsa/about-ebsa (last visited Apr. 21, 2025).

[5] The Court can consider this exhibit and the other ERISA participant fee disclosures filed herewith because they are incorporated into the Complaint. *See* Compl. ¶¶ 46-47. *E.g.*, *Johnson v.*

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 4
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  $35 through November 6, 2024. *See* McMahan Decl., Ex. 5, Nov. 2018 Fee and Investment Notice

2  at 10; Ex. 6, Fee and Investment Change Notice at 1. Voya currently charges a $33 per participant

3  fee. *Id.*, Ex. 4 at 1.

4      Since at least October 2015, the Plan has allocated the per participant recordkeeping fee

5  only to participants with account balances of $5,000 or more using a per capita method:

6      10.4 Expenses

7  All reasonable expenses that are necessary to operate and administer the Plan may

8  be deducted from the Trust Fund or, at the election of the Company, paid directly

9  by the Employers.

10      (a)    Prior to October 1, 2015, expenses related to a particular Participant

11             Account, subaccount, or investment fund may be changed [sic]

12             directly to that Account, subaccount, or fund.

13      (b)    On or after October 1, 2015, the following shall apply to expenses

14             not paid directly by the Employers:

15             (i)    Expenses related to a particular Participant Account,

16                    subaccount, or investment fund may be charged directly to

17                    that Account, subaccount, or fund. The Retirement Plan

18                    Committee shall determine which of such expenses shall be

19                    charged to a particular Participant Account and the amount

20                    to be charged.

21             (ii)   Subject to (b)(v), record-keeping expenses not paid under

22                    (b)(i) shall be charged on a per capita basis (i.e. the same

23                    amount charged to each Participant) to the Accounts of

24                    Participants whose combined account balances equal or

25  *Providence Health & Servs.*, 2018 WL 1427421, at *3 (W.D. Wash. Mar. 22, 2018) (considering

26  fee disclosures, plan documents, and DOL filings incorporated in complaint).

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 5
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

exceed $5,000 in value. If a Participant has more than one

Account, the per capita expense shall be divided among the

Participant's Accounts pro rata.

\*\*\*

(v)    The Retirement Plan Committee may exempt from per capita

charges accounts whose value is below a threshold set by the

Committee that is greater than or less than the threshold in

(b)(ii). The Retirement Plan Committee may set separate

thresholds for different types of per capita charges.

*Id.*, Ex. 1 § 10.4(b)(ii). Participants with account balances less than $5,000 pay nothing in fees. Compl. ¶¶ 95-96.

This means the total fee paid to the recordkeeper is allocated to a subset of participants. Thus, while the Plan pays no more than the negotiated amount per participant—a fee that Plaintiffs concede is reasonable—the fee assessed to participants with account balances of $5,000 or more may be higher. This methodology for allocating fees was disclosed to participants in numerous documents, including the annual Fee and Investment Notice disclosures.[6]

## III.    PLAINTIFFS' CLAIMS.

Plaintiffs allege Defendants "discriminated against" participants with account balances of $5,000 or more by following the Plan's prescribed allocation methodology. Compl. ¶¶ 95-98, 108-10. The Complaint asserts two claims. Claim One alleges the Committee breached its duties of

---

[6] *E.g.*, McMahan Decl., Ex. 7, Oct. 2016 Fee and Investment Notice at 9 ("Fees paid by the Plan for trust, custody, and recordkeeping services are deducted from the Plan by dividing the fees evenly across participant accounts that are at least $5,000 on a per capita basis."). *See also id.*, Ex. 8, Sept. 2017 Fee and Investment Notice at 10; Ex. 5, Nov. 2018 Fee and Investment Notice at 10; Ex. 9, Oct. 2019 Fee and Investment Notice at 12; Ex. 10, Sept. 2020 Fee and Investment Notice at 13; Ex. 11, Dec. 2021 Fee and Investment Notice at 14; Ex. 12, Nov. 2022 Fee and Investment Notice at 14; Ex. 13, Nov. 2023 Fee and Investment Notice at 11; Ex. 4, Nov. 8, 2024, Fee and Investment Notice at 1.

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 6
(Case No. 3:24-cv-06032-TMC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

1 prudence and loyalty set forth in ERISA Section 404(a), 29 U.S.C. § 1104(a). Compl. ¶¶ 133-34.

2 Claim Two alleges that REI and the Board breached their duty to monitor the actions of the

3 Committee in implementing the terms of the Plan. *Id*. ¶¶ 146-51.

4 Plaintiffs seek to represent a putative class of all Plan participants and beneficiaries who

5 had an account balance of $5,000 or more. *Id.* ¶ 119. Excluded from Plaintiffs' proposed class are

6 Plan participants with account balances of less than $5,000. *See id.* Plaintiffs seek to recover

7 alleged losses to the Plan resulting from the challenged fee allocation methodology. *Id.* Prayer for

8 Relief. They also ask the Court to require all Plan participants to bear the Plan's recordkeeping

9 costs. *See id.* ¶¶ 95-98.

10 **IV.    LEGAL STANDARD**

11 To survive a motion to dismiss under Rule 12(b)(6), the Complaint "must contain sufficient

12 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Depot, Inc.*

13 *v. Caring for Montanans*, 915 F.3d 643, 652 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S.

14 662, 678 (2009)). Whether a complaint states a plausible fiduciary breach claim is a context-

15 specific inquiry, and conclusory allegations and assertions devoid of factual support are

16 insufficient. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). "The prospect

17 of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA

18 fiduciary to probing and costly inquiries and document requests about its methods and knowledge

19 at the relevant times" that "elevates the possibility that 'a plaintiff with a largely groundless claim

20 [will] simply take up the time of a number of other people, with the right to do so representing an

21 *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the

22 discovery process will reveal relevant evidence." *Pension Benefit Guar. Corp. ex rel. St. Vincent*

23 *Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013).

24 The Supreme Court has emphasized that in putative ERISA class actions like this one, a Rule

25 12(b)(6) motion to dismiss is an "important mechanism for weeding out meritless claims."

26 *Dudenhoeffer*, 573 U.S. at 425.

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 7
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

## V.    ARGUMENT

This is one of hundreds of recent attorney-driven lawsuits alleging a fiduciary breached its duties by allowing a retirement plan to pay excessive fees. In most of these cases, plaintiffs allege defendants allowed the plan to pay an excessive per participant fee, either through "uncapped" pro rata fees or by failing to negotiate a reasonable per capita fee. *E.g.*, *Johnson*, 2018 WL 1427421, at *7-8 (dismissing claim alleging recordkeeping fees charged "both directly through fees paid out of the Plan's assets and indirectly through the receipt of revenue sharing" were excessive "compared to prevailing market rates"). But the Complaint concedes the per participant fee here was reasonable, even though Plaintiffs include boilerplate allegations about "excessive" fees. *E.g.*, Compl. ¶ 103 ("$38 per participant is a reasonable fee for Bundled RKA for the REI Plan because that is exactly what Schwab has agreed to be paid"). Casting about for a viable theory, Plaintiffs accuse Defendants of disfavoring Plan participants with higher account balances by allocating fees exactly as provided by the Plan. This is precisely the sort of "groundless claim" that requires dismissal. *St. Vincent*, 712 F.3d at 719.

### A.    Regulatory Guidance Regarding Allocation Of Recordkeeping Fees.

DOL guidance on recordkeeping fee allocation forecloses Plaintiffs' claims. "ERISA contains no provisions specifically addressing how plan expenses may be allocated among participants and beneficiaries." McMahan Decl., Ex. 3, FAB 2003-03. Because fiduciaries must "act in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), fiduciaries are "required to implement allocation of expense provisions set forth in the plan, unless such provisions otherwise violate Title I."[7] *Id.*, Ex. 3, FAB 2003-03. Moreover, plan sponsors "have *considerable* discretion in determining, *as a matter of plan design . . .* , how plan expenses will be allocated among participants and beneficiaries." *Id.* (emphasis added). The DOL explained that "the starting point" for determining the permissibility of an allocation

---

[7] Plaintiffs do not allege that the Plan's terms violate ERISA. *See generally* Compl.

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 8
(Case No. 3:24-cv-06032-TMC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

methodology "is a review of the instruments governing the plan":

> Where the method of allocating expenses is determined by the plan sponsor (i.e., set forth in the plan documents), fiduciaries, consistent with section 404(a)(1)(D), will be required to follow the prescribed method of allocation. The fiduciary's obligation in this regard does not change merely because the allocation method favors a class (or classes) of participants. When set forth in plan documents, the method of allocating expenses, in effect, becomes part of defining the benefit entitlements under the plan.

*Id.*

However, when a plan is "silent or ambiguous on this issue," the plan fiduciary is tasked with selecting an allocation methodology. *Id.* The fiduciary must act prudently in selecting the methodology and "weigh[] the competing interests of various classes of the plan's participants and the effects of various allocation methods on those interests." *Id.* The fiduciary also must act "solely in the interest of participants" when she selects a methodology. *Id.* "In this regard, a method of allocating expenses would not fail to be 'solely in the interest of participants' merely because the selected method disfavors one class of participants, provided that a rational basis exists for the selected method." *Id.* Both pro rata and per capita allocation methodologies are permissible. *Id.*

### B.    The Settlor Doctrine Bars Plaintiffs' Claims.

The "threshold question" for any alleged fiduciary breach or prohibited transaction under ERISA is whether the defendant "was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000); *accord Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021); *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004). Plaintiffs do not challenge fiduciary conduct by REI, the Committee, or anyone else. Instead, as the DOL recognizes, the fee allocation methodology they challenge is a "plan design" decision made by the plan sponsor. McMahan Decl., Ex. 3, FAB 2003-03. Consequently, the Court should dismiss the Complaint.

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 9
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

Decisions like whether to offer a plan, along with related decisions over the type of benefits, how the plan will be funded, and whether to charge expenses to the plan (or volunteer, as the employer, to pay them instead), are all plan design decisions made in a settlor capacity, not a fiduciary one. *See*, *e.g.*, *Hughes Aircraft Co.*, 525 U.S. at 444 (holding that "decision[s] regarding the form or structure of the [p]lan such as who is entitled to receive [p]lan benefits and in what amounts" are settlor functions); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries."); *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) (employer's voluntary decision to "cover [plan] expenses" using the employer's own assets—not plan assets—"is a question of plan design," not a fiduciary decision, and "ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants" by covering expenses directly), *abrogated on other grounds by Hughes*, 595 U.S. 170. Accordingly, those decisions are not subject to ERISA's fiduciary duties of prudence and loyalty.

This is because ERISA does not require employers to provide any specific benefit; in fact, ERISA does not require an employer to offer any plan at all. *See Spink*, 517 U.S. at 887. The statute simply protects whatever benefit commitment an employer makes. *See*, *e.g.*, *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985) (ERISA "protect[s] contractually defined benefits" set forth in the plan document); *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 511 (1981) (ERISA allows "the private parties creating the plan" to "define[] the content of the benefit that, once vested, cannot be forfeited"). ERISA's fiduciary duty provisions are implicated only when an individual exercises *discretionary* authority in administering a plan or implementing its terms. *E.g., Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 838 (9th Cir. 2018) ("[o]nly discretionary acts of plan . . . management trigger fiduciary duties"); *Krieger v. Nationwide Mut. Ins. Co.*, 2012 WL 1029526, at *5 (D. Ariz. Mar. 27, 2012) ("The plan's sponsor (e.g., the employer), like a trust's settlor, creates the basic terms and conditions of the plan, executes a written instrument containing those terms and conditions, and provides in that instrument 'a

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 10
(Case No. 3:24-cv-06032-TMC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

procedure' for making amendments. § 402, 29 U.S.C. § 1102. The plan's administrator, a trustee-like fiduciary, manages the plan, [and] follows its terms in doing so . . .").

Here, the Plan document memorializes REI's decision that recordkeeping fees "shall be charged" only to participants "whose combined account balances equal or exceed $5,000 in value." McMahan Decl., Ex. 1 § 10.4(b)(ii). Designing the Plan so that these participants pay such fees is a settlor decision, not a fiduciary one. *See Loomis*, 658 F.3d at 671; *Hutchins II*, 2025 WL 404594, at *4 (determination of whether "Plan expenses will be paid by HP or charged to Plan participants' accounts" is a settlor function); *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322, at *5-7 (Sept. 5, 2024) (dismissing fiduciary breach claim because the "unambiguous, mandatory language" of the plan required using forfeitures to reduce sponsor contributions, not pay expenses, and doing so did not involve fiduciary behavior); McMahan Decl., Ex. 3, FAB 2003-03 ("When set forth in plan documents, the method of allocating expenses, in effect, becomes part of defining the benefit entitlements under the plan."). Because this decision about how to allocate fees cannot support a fiduciary breach claim, the Court should dismiss the Complaint.

### C.    Plaintiffs Do Not Plausibly Allege The Method For Allocating Fees Is A Fiduciary Breach.

Even if Plaintiffs' claims were not barred by the settlor doctrine, the Complaint does not plausibly allege a fiduciary breach.

#### 1.    The Committee would violate its fiduciary obligations if it failed to follow the allocation methodology set forth in the Plan.

Because a fiduciary must follow a plan's lawful terms, the starting point for determining if Plaintiffs plausibly allege the Committee violated its fiduciary duties is the terms of the plan. Plaintiffs' Complaint proposes that the Committee must allocate fees to all participants, regardless of their account balance. *E.g.*, Compl. ¶¶ 116-17. It is beyond dispute that their theory is inconsistent with the terms of the Plan and *disfavors* participants with lower account balance, *i.e.*,

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 11
(Case No. 3:24-cv-06032-TMC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

the absent Plan participants that are excluded from Plaintiffs' class.[8] *See Loomis*, 658 F.3d at 672-73 (rejecting argument that fiduciary violated ERISA by assessing pro rata fee because "flat payments per participant may help some participants but hurt others, depending on the size of each participant's account"); *see also id.* at 672 (explaining with respect to investment management fees that a "flat-fee structure might be beneficial for participants with the largest balances" but would harm "younger employees and others with small investment balances").

Plaintiffs' theory is particularly problematic given that a fiduciary must adhere to the written plan document and implement REI's intent, as the Plan's settlor, in assessing recordkeeping expenses to Plan participants. *See* 29 U.S.C. § 1104(a)(1)(D) (a fiduciary must discharge her duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of" ERISA); McMahan Decl., Ex. 3, FAB 2003-03 ("Plan fiduciaries, therefore, would be required to implement allocation of expense provisions set forth in the plan, unless such provisions otherwise violate Title I."). Nothing in ERISA's general fiduciary duties requires the Committee to override REI's intent or act in a manner that renders a Plan term superfluous. As Ninth Circuit precedent makes clear, a fiduciary does not breach its duties under ERISA by acting in compliance with the lawful terms of a plan document. *See Wright*, 60 F.3d at 1100 ("Because Defendants complied with the Plan's lawful terms and were under no legal obligation to deviate from those terms"—which limited how much employer stock participants could sell—"they provided Plaintiffs with their benefits due"); *Hutchins II*, 2025 WL 404594, at *4 ("an ERISA fiduciary's duty is to ensure that all participants

---

[8] Plaintiffs purport to sue "on behalf of the Plan" under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), Compl. ¶¶ 1-3, yet exclude approximately half the Plan's participants from their class definition. *Id.* ¶¶ 107, 119. It is unclear how the Court could ever certify a class that would *harm* half the Plan's participants by requiring them to pay recordkeeping fees contrary to the Plan's terms, or how Plaintiffs could proceed "on behalf of the Plan" for the same reason. *See Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Execs.*, 182 F. Supp. 3d 573, 585-86 (E.D. Va. Apr. 26, 2016) (denying class certification in ERISA putative class action and noting "[n]umerous cases recognize that a divergence of economic interests between the named plaintiff and absent class members—as identified here—can create a conflict that precludes certification").

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 12
(Case No. 3:24-cv-06032-TMC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

have received the full benefit guaranteed to them by the plan documents"); *Naylor*, 2024 WL 4112322, at *6 (fiduciary was not required "to disregard the terms of the Plan" and use forfeitures to pay plan expenses charged to participants instead of offsetting future sponsor contributions). Plaintiffs have not alleged the Plan document contains any unlawful terms.

Moreover, the written plan document defines the parties' rights and obligations in the first instance. *E.g.*, *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-01 (2013) ("The statutory scheme, we have often noted, is built around reliance on the face of written plan documents.") (citations omitted); *Curtiss-Wright*, 514 U.S. at 83 ("A written plan is to be required in order that every employee may, *on examining the plan documents*, determine exactly what his rights and obligations are under the plan.") (emphasis added). The question, then, is whether Plaintiffs received the benefits the Plan promised them, which they did. Again, Plaintiffs do not complain that the per participant fee was excessive. And since 2015, the Plan dictated the methodology for allocating recordkeeping fees among the Plan participants. McMahan Decl., Ex. 1 at § 10.4(b). Numerous disclosures provided to participants explained this methodology. *See id.*, Exs. 4-5, 7-13. It is crystal clear, then, that Plaintiffs received the precise benefit promised, and no breach occurred. *See id.*, Ex. 3, FAB 2003-03 ("When set forth in plan documents, the method of allocating expenses, in effect, becomes part of defining the benefit entitlements under the plan."); *Hutchins II*, 2025 WL 404594, at *4; *Naylor*, 2024 WL 4112322, at *6.

### 2. Plaintiffs do not plausibly allege the Committee acted imprudently.

Plaintiffs nonetheless allege the Committee breached its duties of prudence and loyalty because it did not override REI's settlor decision. Neither claim passes muster.

To state a viable imprudence claim under ERISA, Plaintiff must allege facts plausibly suggesting the Committee failed to act with the "prudence, and diligence under the circumstances then prevailing" that a person "acting in a like capacity and familiar with such matters" would use when allocating recordkeeping fees. *See* 29 U.S.C. § 1104(a)(1)(B). The prudence inquiry focuses on the fiduciary process, meaning Plaintiffs must allege direct facts demonstrating a deficient

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 13
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    process, or circumstantial factual allegations allowing a reasonable inference that the process was

2    flawed. *See Bracalente v. Cisco Sys.*,. 2024 WL 2274523, at *5 (N.D. Cal. May 20, 2024) (citing

3    *St. Vincent*); *White v. Chevron Corp.*, 2016 WL 4502808, at *8 (N.D. Cal. Aug. 29, 2016). This

4    analysis is "context specific," and must give "due regard to the range of reasonable judgments a

5    fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177. The

6    Complaint asks the Court to infer the Committee failed to prudently monitor Plan recordkeeping

7    fees because the Plan utilized a "discriminatory" methodology for allocating fees that resulted in

8    participants with account balances of $5,000 or more paying a purportedly unreasonable fee.

9    Compl. ¶¶ 103-06. Even assuming fiduciary conduct, there is no fiduciary duty to ensure

10   participants pay a proportionately equal share of plan expenses, so the failure to do so cannot be a

11   fiduciary breach.

12       As the DOL guidance Plaintiffs rely upon makes clear, even when an employer expresses

13   no preference for how plan expenses should be allocated, fiduciaries do not violate any duty under

14   ERISA "merely because [their] selected method disfavors one class of participants, provided that

15   a rational basis exists for the selected method." McMahan Decl., Ex. 3, FAB 2003-03; *see also*

16   *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983) ("ERISA does not mandate that employers

17   provide any particular benefits, and does not itself proscribe discrimination in the provision of

18   employee benefits."). Here, the Plan's allocation methodology is entirely consistent with the

19   guidance set forth in FAB 2003-03.

20       In FAB 2003-03, the DOL explained that a method of allocating expenses that would

21   require all participants to pay the same fixed per capita amount—regardless of the size of their

22   account balance—is permissible, even though it would impose a heavier burden on participants

23   with smaller account balances who might, in turn, be less willing to participate in the plan. *See*

24   McMahan Decl., Ex. 3, FAB 2003-03. The DOL also approved a pro rata approach, which

25   typically involves paying fees via a fixed percentage-of-assets charge. *Id.* (noting that "a pro rata

26   method of allocating expenses among individual account (i.e., allocations made on the basis of

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 14
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

assets in the individual account) would appear in most cases to be an equitable method"). The Vanguard article that Plaintiffs cite in their Complaint explains how this works in practice:

> Where fees are paid on a pro rata basis, each participant's fees will generally rise as the account balance grows with contributions and may fall as the result of any withdrawals or distributions. . . . Plans using a pro rata method should recognize that participants with higher balances may pay more in fees than lower-balance participants who invest in the same funds. This approach generally benefits participants with smaller balances within the plan.

*Id.*, Ex. 14, Vanguard, *Slicing and dicing retirement plan fees: Allocation consideration for plan sponsors* (Dec. 2018), at 4-5; Compl. ¶ 99. Of course, allocating a greater share of recordkeeping fees to participants with larger account balances is the exact practice Plaintiffs deem "discriminatory." But whether using a per capita or pro rata approach, some subset of participants will pay a disproportionate amount of the fees. Plaintiffs claim ERISA requires the Committee to allocate fees in a manner that "maximize[s] [*Plaintiffs'*] pecuniary benefits," *Wright*, 360 F.3d at 1100, regardless of the negative impact on other participants and what the Plan might say. As the Ninth Circuit has confirmed, ERISA imposes no such requirement. *Id.* ("ERISA does not create an exclusive duty to maximize pecuniary benefits" or "require a fiduciary to resolve every issue of interpretation in favor of plan beneficiaries") (cleaned up); *see also Hutchins II*, 2025 WL 404594, at *4 (same).

The fact that fiduciaries routinely pay plan expenses through revenue sharing—a method that allocates fees to participants based on the investments they select—confirms the implausibility of Plaintiffs' claims. In a revenue sharing model, mutual funds collect fees from investor assets and distribute a portion of those fees to service providers, such as recordkeepers, to reduce or cover the service providers' costs. *See Tibble v. Edison Int'l*, 729 F.3d 1110, 1127 (9th Cir. 2013) ("*Tibble II*"), *rev'd on other grounds by Tibble v. Edison Int'l*, 575 U.S. 523 (2015) ("*Tibble III*"); *see also Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1151-52 (10th Cir. 2023) (discussing

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 15
(Case No. 3:24-cv-06032-TMC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  permissible use of revenue-sharing to cover plan expenses). As the Seventh Circuit explained,

2  there is nothing "wrong, for ERISA purposes, in [an] arrangement" whereby "revenue sharing" is

3  used to cover plan expenses, because "such an arrangement . . . violates no statute or regulation."

4  *Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009), *abrogated on other grounds by Hughes*,

5  595 U.S. 170.

6          But some investments pay more revenue sharing than others, and some investments pay no

7  revenue sharing at all. *E.g.*, *Tibble v. Edison Int'l*, 2010 WL 2757153, at *23 (C.D. Cal. July 8,

8  2010) ("*Tibble I*") (explaining plan fiduciaries made numerous changes to plan investments and,

9  in each instance, "chose to replace an existing mutual fund with one offering less revenue sharing

10  or no revenue sharing at all"), *abrogated on other grounds by Tibble III*, 575 U.S. 523. This means

11  that it is lawful under ERISA to allocate recordkeeping expenses *only* to participants who select

12  investment options that provide "revenue sharing" to the plan's recordkeeper, even though it

13  means other participants who did not choose investments that pay revenue sharing will get a free

14  ride.[9] That is no different than the Plan's fee allocation model that Plaintiffs label "discriminatory."

15          Simply put, nothing in the DOL guidance Plaintiffs cites or the relevant case law suggests

16  that allocating recordkeeping expenses to a subset of participants is a breach of the duty of

17  prudence. Nor does the Complaint plausibly allege that the approach adopted by REI in its

18  "considerable" discretion as settlor was irrational or arbitrary, such that it should somehow be

19  viewed differently than the other permissible allocation methods described above. There is nothing

20  nefarious or imprudent about allocating recordkeeping fees to Plan participants who are in a better

21  position to bear those fees than "younger employees" or those "with small investment balances."

22

23  [9] The fact that revenue sharing and a pro rata method of paying fees are both permissible disposes
   of Plaintiffs' allegation that the "only proper way to alleviate costs to participants below a certain

24  asset threshold" is for the plan sponsor to pay those fees. Compl. ¶ 101. Both those methodologies
   result in some participants paying more, perhaps significantly more, than others. And there is no

25  authority that requires a plan sponsor to pay recordkeeping expenses. *E.g.*, *Loomis*, 658 F.3d at
   671; *Hutchins II*, 2025 WL 404594, at *4 (ERISA does not require fiduciaries to "maximize

26  pecuniary benefits" by paying plan expenses) (cleaned up).

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 16
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  *Loomis*, 658 F.3d at 672. In short, choosing one of several legally permissible alternatives that is

2  consistent with DOL guidance cannot constitute a fiduciary breach under ERISA. *Cf. Hutchins v.*

3  *HP Inc.*, 737 F. Supp. 3d 851, 862-64 (N.D. Cal. 2024) ("*Hutchins I*") (rejecting theory that ERISA

4  requires using 401(k) plan forfeitures to pay plan administrative expenses rather than offset future

5  employer contributions because both are permissible under regulatory guidance); *Hutchins II*,

6  2025 WL 404594, at \*5 (same); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450, at \*9 (S.D.

7  Cal. Sept. 9, 2024) (same).

8                    **3.     Plaintiffs do not plausibly allege the Committee acted disloyally.**

9          Plaintiffs also do not allege any facts supporting their assertion that the Committee acted

10  disloyally in allocating recordkeeping fees. This claim is premised on the allegation that the

11  Committee cannot favor one group of participants over another. Compl. ¶¶ 140-41. But FAB 2003-

12  03 requires dismissal of that claim. The DOL cogently explained that "a method of allocating

13  expenses would not fail to be 'solely in the interest of participants' merely because the selected

14  method disfavors one class of participants," *id.*, the exact issue Plaintiffs complain of here.

15          Moreover, Plaintiffs do not allege that the challenged decision was made for the benefit of

16  REI or any third party to the Plan, as they must to state a claim. The duty of loyalty prevents

17  fiduciaries from "engaging in transactions that involve self-dealing or that otherwise involve or

18  create a conflict between the trustee's fiduciary duties and personal interests." *Thomson v. Caesars*

19  *Holdings, Inc.*, 661 F. Supp. 3d 1043, 1054 (D. Nev. Mar. 13, 2023). Thus, for example, courts

20  "have denied motions to dismiss when plaintiffs have sufficiently alleged that defendants made

21  investment management decisions to benefit the plan sponsor at the expense of the plan

22  participants." *Id.*; *see also, e.g.*, *Loomis*, 658 F.3d at 671 (affirming dismissal of a disloyalty claim

23  where complaint did not allege facts to show that the defendant selected investments "to enrich

24  itself at participants' expense"); *Beldock v. Microsoft Corp.*, 2023 WL 1798171, at \*7 (W.D.

25  Wash. Feb. 7, 2023) ("To state a claim for breach of the fiduciary duty of loyalty, Plaintiffs must

26  plead facts sufficient to raise a plausible inference that Defendants engaged in self-dealing, took

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 17
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    actions for the purpose of benefitting themselves or a third party at the expense of Plan participants,

2    or acted under an actual or perceived conflict of interest in administering the Plan."). Plaintiffs

3    allege only that the methodology for allocating recordkeeping expenses favors one set of Plan

4    participants at the expense of another, not that it benefits REI or any other third party. Plaintiffs

5    thus do not state a disloyalty claim. *E.g.*, *Hutchins II*, 2025 WL 404594, at *5-6 (using forfeitures

6    to provide benefits to other participants could not state disloyalty claim); *White v. Chevron Corp.*,

7    2017 WL 2352137, at *7 (N.D. Cal. May 31, 2017) (dismissing disloyalty claim where plaintiff

8    alleged no facts showing any benefit to the defendant resulting from the alleged conduct) *aff'd*,

9    752 F. App'x 453 (9th Cir. 2018).

### D.    Plaintiffs Do Not Plausibly Allege A Loss To The Plan.

11    Plaintiffs' fiduciary breach claim also fails as a matter of law because they have not

12    plausibly alleged that the Plan's fee allocation method resulted in losses to the *Plan*.

13    Plaintiffs sue under ERISA Section 502(a)(2), which permits a plan participant to bring a

14    civil enforcement action against a fiduciary "to make good to such plan any losses to the plan

15    resulting from [the fiduciary's] breach." 29 U.S.C. §§ 1132(a)(2), 1109(a). "The claim for

16    fiduciary breach gives a remedy for injuries to the ERISA plan as a whole, but not for injuries

17    suffered by individual participants as a result of a fiduciary breach." *Wise v. Verizon Commc'ns,*

18    *Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552

19    U.S. 248, 254, 256 (2008)); *see also Russell*, 473 U.S. at 142 (Section 502(a)(2) authorizes suit to

20    recover under ERISA Section 409(a), which provides "remedies that would protect the entire

21    plan"). Thus, to plausibly allege a fiduciary breach under this provision, Plaintiffs "must allege

22    that the fiduciary injured the benefit plan or otherwise 'jeopardize[d] the entire plan or put at risk

23    plan assets.'" *Wise*, 600 F.3d at 1189 (citations omitted).

24    As discussed, Plaintiffs allege a subset of participants with $5,000 or more in their account

25    suffered *individual* losses, while individuals with less than $5,000 were not harmed at all (but

26    would be by Plaintiffs' requested relief). But Plaintiffs *do not* allege the total per participant fee—

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 18
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

whether $38 at the beginning of the class period or the $33 paid now—is excessive. To the contrary, Plaintiffs admit that fee was reasonable, meaning they also admit the total annual recordkeeping fee paid by the Plan was reasonable, so no "loss" occurred. *See Brock v. Robbins*, 830 F.2d 640, 646 (7th Cir. 1987) (claim processing fees paid to plan service provider "were reasonable and therefore the trustees' action in approving them did not result in any loss to the Fund"). The Court should dismiss the Complaint for this additional reason.

### E.    Plaintiffs Do Not State A Failure-to-Monitor Claim.

In Claim Two, Plaintiffs allege REI and the Board breached their duty to monitor the Committee. Compl. ¶¶ 146-51. This claim is derivative of Plaintiffs' other claims, and because those claims fail, the monitoring claim does as well. *E.g.*, *Beldock*, 2023 WL 1798171, at *8.

## VI.    CONCLUSION

As was the case with Plaintiffs' ill-conceived forfeiture claims, their allegation that the Plan's method for allocating fees violates ERISA fails to state a plausible claim as a matter of law. The Court should dismiss the Amended Complaint with prejudice.

DATED this 9th day of May, 2025.

*I certify that this memorandum contains 6,626 words, in compliance with the Local Civil Rules.*

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Marisa L. Berlinger*
Marisa L. Berlinger (WSBA No. 58991)
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Fax: (206) 274-6401
Email: marisa.berlinger@morganlewis.com

Deborah S. Davidson (IL Bar No. 06255813)
*Admitted Pro Hac Vice*

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 19
(Case No. 3:24-cv-06032-TMC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

110 North Wacker Drive
Chicago, IL 60606-1511
Phone: (312) 324-1159
Fax: (312) 324-1001
Email: deborah.davidson@morganlewis.com

Sean McMahan (TX Bar No. 24130831)
*Admitted Pro Hac Vice*
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Phone: (214) 466-4102
Fax: (214) 466-4001
Email: sean.mcmahan@morganlewis.com

*Counsel for Defendants*

DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT - Page 20
(Case No. 3:24-cv-06032-TMC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401