1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MACY SMITH AND SALLY JOHNSON,
individually, and as representatives of a Class
of Participants and Beneficiaries of the
Recreation and Equipment, Inc. Retirement
and Profit Sharing Plan,

                Plaintiffs,

                v.

RECREATIONAL EQUIPMENT, INC., et
al.,

                Defendants.

NO. 3:24-cv-06032-TMC

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(3:24-cv-06032)

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

## INTRODUCTION

Plaintiffs Macy Smith and Sally Johnson ("Plaintiffs"), are participants in the Recreation and Equipment, Inc. Retirement and Profit Sharing Plan ("Plan" or "REI Plan"). They brought this ERISA action on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2), and under Fed. R. Civ. P. 23 as representatives of a class of participants and beneficiaries of the Plan, against Defendants Recreational Equipment, Inc. ("REI"), the Board of Directors of Recreational Equipment, Inc., and the Retirement Plan Committee of Recreational Equipment, Inc. ("Plan Committee") (collectively, "Defendants"), for breach of ERISA's fiduciary duties.

Plaintiffs' allegations are detailed and serious. The Amended Complaint was brought "to remedy Defendants' breaches of fiduciary duties with regard to excessive recordkeeping and administrative ('RKA') fees." Dkt # 26 ("FAC") at ¶ 1. Not only do the excessive fees breach Defendants' duties of prudence under ERISA, *id.*, at ¶¶ 104-107, but the Amended Complaint also specifically alleges that Defendants independently violated their fiduciary duty of loyalty by discriminating in charging RKA fees only to participants with retirement accounts of $5000 or more (the "$5000+ participants"). *Id.*, at ¶¶ 94-98.  Finally, Plaintiffs allege that REI and its Board failed to monitor those on the Plan Committee responsible for both the excessive Plan RKA fees and their discriminatory application. *Id.*, ¶¶ 20, 145-151.

Defendants in their motion to dismiss offer little justification for the excessive and discriminatory RKA fees paid to the recordkeeper, Schwab Retirement Plan Services Inc. ("Schwab"), for REI $5000+ participants. The Plan charged this subset of Plan participants almost ***two times*** more for fungible and commoditized Bundled Plan RKA services ($78 per participants vs. $38 per participant), FAC, ¶¶ 102-108, than what they should have paid for the same fungible

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(3:24-cv-06032)

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

and commoditized RKA services available from equally-qualified recordkeepers providers during the Class Period.[1]

Defendants defend these discriminatory and excessive RKA fees with four arguments, none of which undermine the plausibility of Plaintiffs' breach of fiduciary claims. First, Defendants maintain that "while the Committee may negotiate and monitor the amount of recordkeeping fees, REI decided how to allocate those fees among the participants and made the allocation methodology a mandatory Plan term, stripping the Committee of any fiduciary obligations in that respect." Dkt. #30 at 8. However, the Plan itself provides fiduciary discretion in deciding the allocation of RKA fees and participants.  If following the Plan document violates the fiduciary duties of prudence and loyalty, then the Plan Committee is not immunized by the settlor function doctrine. Second, Defendants maintain that "[a]ssuming any fiduciary discretion existed regarding fee allocation, assessing fees to participants with larger balances who were better situated to pay those fees is clearly within the 'range of reasonable judgments' a fiduciary can make." *Id.* Of course, the problem with this argument is the assumption that just because a participant has a higher account that they are necessarily "better situated to pay those fees." Whether such a discriminatory decision with regard to REI $5000+ participants is "within the range of reasonable judgments" depends on more than just account balances and the Plan Committee had to look to  other relevant factors to make a reasonable decision. There is no evidence or

---

[1] Defendants add facts outside of the Amended Complaint, maintaining that Schwab "was the Plan recordkeeper through November 6, 2024, and Voya Institutional Plan Services ("Voya") after that—charged an annual per participant fee of $38 from 2017 through September 2022, then $35 through November 6, 2024, then $33 through the present." Def's Memorandum of Law ("Dkt. 30"),  at 7-8. Even if the Court were to consider these facts, which it should not on a motion to dismiss since they contain disputed facts, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), they do not in any way undermine the fact that the Plan continue to place an excessive RKA fee burden only on REI $5000+ participants.

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

argument that they did. Third, Defendants argue that "Plaintiffs do not plausibly allege a loss to the Plan, . . . [because] the fee allocation harmed a subset of Plan participants." *Id.* Defendants are wrong that this case involves "individual losses," as this is a representative claim under ERISA Section 502(a)(2) brought on behalf of Plan. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) ("§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries"). Subset of participants are permitted to bring Section 502(a)(2) under the Plan, as they do, for instance, with underperforming investment claims. Fourth, and finally, Defendants assert that the "Court should dismiss Plaintiffs' failure-to-monitor claim because it is derivative of . . . their primary fiduciary breach claims." *Id.* Because Plaintiffs have plausibly stated breaches of the fiduciary duties of prudence and loyalty, they may also maintain their derivative duty to monitor claim. *See Bracalente v. Cisco Systems*, 2023 WL 5184138, at *83-84 (N.D. Cal. Aug. 11, 2023).

For all of these reasons, Defendants' motion to dismiss the amended complaint should be denied in its entirety.

## I.    ERISA STANDARDS

ERISA protects the "financial soundness" of retirement plans "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(a)–(b). ERISA's fiduciary duties are "the highest known to the law." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (quoting *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996)).

Fiduciaries must act "solely in the interest of the participants and beneficiaries" and to carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

1  the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(A),

2  (B). Further, "a trustee has a continuing duty to monitor trust investments and remove imprudent

3  ones … separate and apart from the trustee's duty to exercise prudence in selecting investments at

4  the outset." *Tibble*, 843 F.3d at 1197 (*quoting Tibble v. Edison Int'l.*, 135 S. Ct. 1823, 1828 (2015)).

5  "Expenses, such as management or administrative fees, can sometimes significantly reduce the

6  value of an account in a defined-contribution plan." *See Tibble*, 575 U.S. at 535.

## II.    MOTION TO DISMISS STANDARDS

A complaint must contain a "short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a). "On a motion under Rule 12(b)(6) for failure to state a

claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of

a legally cognizable claim and the grounds on which it rests." *Cryer v. Franklin Templeton Res.,*

*Inc.*, 2017 WL 818788, at *3 (N.D. Cal. Jan. 17, 2017) (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)). While "detailed factual allegations" are not required, a complaint must have

sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Rule 8 does not require a

plaintiff to plead facts tending to rebut all possible lawful explanation for a defendant's conduct."

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Courts must "accept all factual

allegations in the complaint as true and construe the pleadings in the light most favorable to the

nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "A well-pleaded

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable, and that a recovery is very remote and unlikely." *In re Gilead Scis. Sec. Litig.*, 536

F.3d 1049, 1057 (9th Cir. 2008).

1

## III.    ARGUMENT

2

**A.    Plaintiffs state plausible claims for breach of the duty of prudence based on excessive Bundled RKA fees (Count I).**

3

4          Defendants challenge the amended complaint as not alleging a fiduciary process which led

5   to the discriminatory and excessive fees at issue in this case. However, "ERISA plaintiffs generally

6   do not have 'inside information' regarding the fiduciary's process" and "an ERISA plaintiff

7   alleging breach of fiduciary duty does not need to plead details to which [they have] no access, as

8   long as the facts alleged tell a plausible story." *See Lopez v. Embry-Riddle Aeronautical Univ.,*

9   *Inc.*, 2023 WL 7129858, at *5 (M.D. Fla. July 12, 2023) (citing *Allen v. GreatBanc Tr. Co.*, 835

10  F.3d 670, 678 (7th Cir. 2016); *Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022) ("*Hughes*

11  *I*")). Defendants also repeatedly and unconvincingly insist that "Plaintiffs do not complain that the

12  per participant fee was excessive." Dkt. #30 at 19.  In fact, they expressly do complain that the

13  per participant was excessive for Plaintiffs and the Class of participants they seek to represent.

14  This subset of Plaintiffs and the Class allege in the amended complaint that they are being required

15  to pay on average $78 per participant per year for RKA fees while the negotiated rate with Schwab

16  during the same period for the entire Plan was $38 per participant per year. Thus their RKA fee

17  burden is excessive and imprudent, as they are paying more than twice as much than what they

18  should be paying. Dkt. #26, at ¶ 98-108.  Defendants' motion to dismiss the duty of prudence claim

19

20  regarding the REI Plan's excessive RKA fees fails for additional reasons as well.

21

22          Most importantly, the duty of prudence includes a continuing duty to monitor plan

23  expenses and "incur only costs that are reasonable." *Tibble*, 843 F.3d at 1197. Defendants cite to

24  a number of Ninth Circuit cases in order to have the amended complaint dismissed. However, as

25  a district court in the Ninth Circuit recently explained, in a case on point:

26

---

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(3:24-cv-06032)

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53045
TEL.: (414) 828-2372

> Courts have taken slightly different approaches at the motion to dismiss stage to evaluating the viability of causes of action averring excessive recordkeeping and administrative fees. *Compare In re Sutter Health ERISA Litig.*, No. 20-cv-1007, 2023 WL 1868865, at *10 (E.D. Cal. Feb. 9, 2023) (finding allegation of specific facts supporting claims of excessive fees sufficient), *with Wehner v. Genentech, Inc.*, No. 20-cv-6894, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9, 2021) (holding "a plaintiff must plead administrative fees that are excessive in relation to the *specific* services the recordkeeper provided to the *specific* plan at issue"). In *White [v. Chevron Corp.]*, the court (applying the latter approach) dismissed breach of duty of prudence claims in part because the plaintiffs did not "allege any facts from which one could infer that the same services were available for less on the market." 2016 WL 4502808, at *14. These approaches are perhaps most clearly distinguished by the extent of the burden they place, respectively, on plaintiffs to plead that fees were excessive.

*See Nagy v. CEP Am., LLC*, 2024 WL 2808648, at *3 (N.D. Cal. May 30, 2024) (emphasis in original); *see also Schuster v. Swinerton Inc.*, Case No. 3:24-cv-04970-JSC, 2025 WL 1069887 (N.D. Cal. April 8, 2025) (denying motion to dismiss based on the *Nagy* standard in a materially similar case).

The plaintiffs in *Nagy* had alleged, among other things, that Schwab, the same Plan recordkeeper here, offered "standard services typical of other recordkeepers despite receiving . . . higher fees." *Id.* at *4. Further, "[t]o contextualize the fees paid to Schwab, Plaintiffs point to data evaluated by a defense expert in another case about recordkeeping fees for nine plans with between 2,500 and 15,000 participants where 'the range of fees was $48.00 to $86.15 in 2017 . . . Defendants do not contest that the fees paid in these nine comparator cases were for recordkeeping services alone." *Id.* Although the defendants in *Nagy* did contest that "Plaintiffs' proffered comparator plans are unhelpful because the 'allegations about the Plan's fees refer to payment to two parties for *two different types of services* (recordkeeping and general administration)," *id.* (emphasis in original), the court rejected that argument, instead finding that, "Plaintiffs . . . explicitly allege that the fees the Plan paid Schwab simply for ordinary recordkeeping services . . . dwarfed those paid to recordkeepers across a range of comparable plans." *Id.* (citing *Johnson v.*

*Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 467 (N.D. Cal. 2017)) (finding claimed breaches of duties of prudence and loyalty plausible where "recordkeeping expenses were five to ten times higher than average for similarly-sized plans with over $1 billion in assets"). Finally, the court in *Nagy* observed that, "Plaintiffs need not provide even more granular, micro-level 'apples to apples' comparisons, based on data to which they may not yet have access, in order to survive a motion to dismiss." *Id.* Under all these circumstances, the court in *Nagy* concluded that, "Plaintiffs have done enough to support a plausible inference that Defendants breached their duty of prudence by paying excessive administrative fees to Schwab." *Id.*

The same is true here. Plaintiffs have alleged that Schwab provided the REI Plan standard, non-customized services typical of other recordkeepers, FAC, ¶ 56 ("The REI Plan provided participants all the commoditized and fungible Bundled RKA services provided to all other massive 401(k) plan participants. The quality or type of RKA services provided by competitor recordkeepers are comparable to that provided by Schwab to the REI Plan."); Plaintiffs have contextualized the fees by comparing Bundled RKA fees paid by the REI $5000+ Participants ($78) compared to the actual fee paid by the REI Plan to Schwab for the entire plan ($38), FAC, ¶¶102-110; and Defendants cannot, and do not, contest that the fees paid by the REI $5000+ Participants were for different services than those received by the other participants. *Id.* Moreover, like the plaintiffs in *Nagy*, Plaintiffs allege essentially that the fees the Plan paid to Schwab "for ordinary recordkeeping services . . . dwarfed those paid to recordkeepers across a range of comparable plans." FAC, ¶ 109 ("[A] hypothetical prudent plan fiduciary would not agree to pay an over 105% premium for what they could otherwise pay for the materially similar level and quality of Bundled RKA services for participants with balances greater than $5,000."). Under these circumstances, this Court should follow the well-reasoned opinion in *Nagy* and find that Plaintiffs

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

"need not provide even more granular, micro-level 'apples to apples' comparisons, based on data to which they may not yet have access, in order to survive a motion to dismiss." *See Nagy*, 2024 WL 2808648, at \*4; *Schuster*, 2025 WL 1069887, at \*5 (citing *Nagy*, 2024 WL 2808648, at \*4). Thus, as in *Nagy* and *Schuster*, this Court should conclude that Plaintiffs have done enough to support a plausible inference that Defendants breached their duty of prudence by paying excessive Bundled RKA fees to Schwab.

Moreover, and significantly, in addition to *Nagy*, district courts in the Ninth Circuit "have repeatedly found allegations like these sufficient to state a claim of imprudence based on excessive recordkeeping fees." *See Coppel v. SeaWorld Parks & Ent., Inc.*, 2023 WL 2942462, at \*14 (S.D. Cal. Mar. 22, 2023); *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at \*11 (S.D. Cal. June 24, 2020) (finding plaintiffs stated a claim for breach of fiduciary duty under ERISA by alleging "the amount of fees charged and the availability of cheaper, readily available recordkeeping services."). Finally, courts in other Circuits have come to persuasive, similar conclusions in dismissing motions to dismiss regarding excessive RKA claims where well-pled fungibility and commodification allegations have been made. *See, e.g., Munt*, 728 F. Supp. 3d at 973 n. 10 ("To the extent that Defendants implicitly argue . . . that Plaintiffs are required to allege with specificity what recordkeeping services the Plan and comparator plans each received, the Court does not adopt that specific argument. Plaintiffs' allegations that other recordkeepers provided a similar level and quality of service as Fidelity did to the Plan are sufficient to meet the *Hughes II* pleading standard.") (citing *Hughes v. Nw. Univ.*, 63 F.4th 615, 630–31 (7th Cir. 2023) ("*Hughes II*")).

For all these reasons, then, Plaintiffs have stated a plausible claim for breach of the duty of prudence based on excessive Bundled RKA fees and the Court should deny Defendants' motion to dismiss the amended complaint on this basis.

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**B.      Plaintiff allege a plausible breach of the duty of loyalty based on discriminatory treatment of a subset of Plan participants (Count I).**

As discussed above, by statute, the ERISA duty of loyalty requires that the fiduciary act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." *See McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2025 WL 732087, at *2 (N.D. Cal. Mar. 3, 2025) ("*McManus II*") (citing 29 U.S.C. § 1104(a)(1)(A)). Contrary to the cases cited by Defendants, a duty of loyalty violation does not solely deal with self-dealing or benefitting a third-party. Dkt. #30 at 23-24 (citing cases). Favoring one group of Plan participants over another for no rational reason can also violate the duty of loyalty. Indeed, the U.S. Supreme Court has consistently held that an ERISA fiduciary owes a duty of impartiality to plan participants. *See Howe v. Varity*, 516 U.S. 489, 514 (1996) (describing duty of "trustee[s] to take impartial account of the interest of all beneficiaries"). Other courts have also noted that fiduciaries owe a duty to treat all participants and beneficiaries impartially. *See Summer v. State Street*, 104 F.3d 105, 108 (7th Cir. 1997) ("[P]icking and choosing among beneficiaries [would be] in violation of the traditional duty imposed by trust law of impartiality among beneficiaries.").

Separately, Plaintiffs have alleged a plausible breach of the duty of loyalty by the Plan Committee subjecting similarly-situated Plan participants receiving the exact same Plan services to substantially different fees. In this vein, Plaintiff alleged that "[t]he Plan participant fee disclosure indicates the total annual per capita Plan Administrative fee for trust, custody and recordkeeping services should have been only $38 per participant. The Plan participant fee disclosure, however, further describes how the actual amount charged to participants is unknown and will fluctuate based on being divided evenly across participants accounts that have more than

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(3:24-cv-06032)

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
T E L .: ( 4 1 4 ) 8 2 8 - 2 3 7 2

$5,000. The Plan Committee discriminatorily, and without reason, allocated the Bundled RKA fees only to those participants with balances greater than $5,000." FAC, ¶¶ 93-95. In other words, "[t]he Plan Committee subsidized the participants with a balance less than $5,000 by requiring that participants with a balance greater than $5,000 pay for all Bundled RKA fees." *Id.*, at ¶ 96.

Defendants *concede* that, in fact, this how the REI Plan has operated during the entire Plan period. Dkt. #30 at 11, 17. Indeed, it is not just the fee disclosures that laid out this arbitrary dichotomy between those who pay fees and those who do not, but the Plan itself in Section 10.4(b)(ii) lays out this discriminatory treatment of Plan participants. *Id.* ("Since at least October 2015, the Plan has allocated the per participant recordkeeping fee only to participants with account balances of $5,000 or more using a per capita method.") (citing *id.*, Ex. 1 § 10.4(b)(ii)). Section 10.4(b)(ii) states in full: "***Subject to (b)(v)***, record-keeping expenses not paid under (b)(i) shall be charged on a per capita basis (i.e. the same amount charged to each Participant) to the Accounts of Participants whose combined account balances equal or exceed $5,000 in value. If a Participant has more than one Account, the per capita expense shall be divided among the Participant's Accounts pro rata." *See id.,* Ex. 1 § 10.4(b)(ii) (emphasis added).

Although Defendants maintain that this RKA fee is part of a "mandatory Plan term" that the Committee had to follow, *id.* at 8*,* that it is not the case according to the express language of the Plan, and Defendants conveniently elide over Plan Section 10.4(b)(v). Indeed, the relevant Field Assistance Bulletin ("FAB") states that the "the starting point" for determining the permissibility of an allocation methodology "is a review of the instruments governing the plan." Dkt. #30 at 14-15; McMahan Decl., Ex. 3, FAB 2003-03. Yet, in Plan Section 10.4(b)(v), referred to in Section 10.4(b)(ii) itself, the Plan Committee ***gives itself express fiduciary discretion*** when the Plan states that "the Plan Committee ***may*** exempt from per capita charges accounts whose

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

value is below a threshold set by the Committee that is greater than or less than the threshold in

(b)(ii). The Retirement Plan Committee *may* set separate thresholds for different types of per capita

charges." *Id.* at 12 (citing *id.*, Ex. 1 § 10.4(b)(v)) (emphasis added).

Nevertheless, Defendants persist in maintaining that they only acted as settlors not subject

to fiduciary duties in setting up in the Plan the $5000 RKA fee threshold.  Dkt. #30 at 15.  But they

also recognize that, "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold

question is ... whether [the person employed to provide services under a plan] was acting as a

fiduciary (that is, was performing a fiduciary function) when taking the action subject to

complaint."  *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also Santomenno v.

Transamerica Life Ins. Co.,* 883 F.3d 833, 838 (9th Cir. 2018) ("discretionary acts of plan . . .

management trigger fiduciary duties").

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such
> plan or exercises any authority or control respecting management or disposition of
> its assets, (ii) he renders investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

As between a fiduciary and a settlor, fiduciary duties "consist of such actions as the

administration of the plan's assets." *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444

(1999).  Conversely, a settlor "makes a decision regarding the form or structure of the

Plan." *Id.* Settlors make decisions "such as establishing, funding, amending, and terminating the

trust." *See Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014); *see also

McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2024 WL 4944363, at *4 (N.D. Cal. Nov. 1,

2024) ("*McManus I*").

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

Here, the Plan document provides that the Plan Committee's authority includes "exempt[ing] from per capita charges accounts whose value is below a threshold set by the Committee that is greater than or less than the threshold in (b)(ii) [and t]he Retirement Plan Committee **may** set separate thresholds for different types of per capita charges." *Id.* at 12 (citing *id.*, (emphasis added)). Conversely, settlor functions like amending and terminating the Plan are expressly reserved for the Company itself. *See, e.g.,* Ex. 1 § 11.1.

Thus, Defendants' first argument concerning the settlor function is readily refuted for two reasons. First, the Plan Committee was not just following Plan terms established by the Plan settlors, without fiduciary duty, when they instituted the $5000 threshold for RKA fees. Rather, the Plan gives the Plan Committee **express fiduciary discretion** to deviate from the $5000 threshold limit for any individual Plan participant. Although it is not clear whether the Plan Committee has exercised that discretion historically, even not exercising that power is a fiduciary discretionary act by Defendants that must be reasonable and explained. In short, Defendants acted as fiduciaries in deciding how to charge participants for RKA fees,. Thus, the Court should find that determining fee amounts for individual Plan participants is a fiduciary, as opposed to a settlor, function. *Cf. McManus I*, 2024 WL 4944363, at *4.

Second, even if these fee allocation decisions were within the discretion of the Plan Committee, which they were, breaches of duty of loyalty still may overcome the fiduciary duty to follow the Plan terms in circumstances like this one where fiduciary discretion has been exercised in an arbitrary manner and violates the duty of loyalty. *See id.* at *5 ("Plaintiff correctly observes that following a Plan is not a shield against ERISA's requirement to follow fiduciary duties.") (citing *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA.")).

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

1    Perhaps understanding the weakness of their settlor function argument, Defendants pivot

2    and argue that "[a]ssuming any fiduciary discretion existed regarding fee allocation, assessing fees

3    to participants with larger balances who were better situated to pay those fees is clearly within the

4    'range of reasonable judgments' a fiduciary can make." Dkt. #30 at 9, 18-19.  Yet, the discretion

5    provided to the Plan Committee is not just between those who have more than $5000 in their

6    account and those who do not.  The discretion of the Plan Committee extends to exempting "from

7    per capita charges accounts whose value is below a threshold set by the Committee that is greater

8    than or less than the threshold in (b)(ii) . . . . [and] set[ting] separate thresholds for different types

9    of per capita charges." *Id.* at 12 (citing *id.*, Ex. 1 § 10.4(b)(v) (emphasis added)). Although the

10   statement that fiduciaries are able to act with a "range of reasonable judgments" is a truism and is

11   good as far as it goes, Defendants do not address at all whether in fact the Plan Committee

12   exercised its power of exemption and setting thresholds for different types of per capita charges

13   for certain individual Plan participants and if they did, why they did so, and whether that reasoning

14   was consistent with their fiduciary duties. This is problematic because if the Plan Committee did

15   not exercise this discretionary power and just assumed, without further facts, that because a

16   participant has a higher account balance that they are "better situated to pay those fees," as

17   Defendants maintain, Dkt. #30 at 9, 22, then they also failed to act in a way consistent with their

18   duty of loyalty which required them to look out for the best interest of all Plan participants. Thus,

19   inconsistent with FAB 2003-03, a method of allocating expenses fails to be 'solely in the interest

20   of participants' not just because the selected method disfavors one class of participants, but also

21   because the Plan Committee has not provided a rational basis for the fee allocation method it

22   selected.

23
24
25
26

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(3:24-cv-06032)

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

1    In short, whether such discriminatory decisions deviate or do not deviate from the $5000

2  RKA threshold is **only** "within the range of reasonable judgments" if the Plan Committee made

3  determinations based on the best interests of each participant and not just based on their Plan

4  balance alone. In this regard, there is no evidence that the Plan Committee exercised its discretion

5  with regard to Plan RKA fees on a rational and reasonable basis, especially if the only explanation,

6  which is not even provided in Plan Committee minutes or materials, is that a participant with a

7  higher account balance necessarily are "better situated to pay those fees." Instead, as outlined in

8  Vanguard, *Slicing and dicing retirement plan fees: Allocations considerations for plan sponsors*

9  (Dec. 2018), at 4 (Dkt. #31, Ex. 14),  cited in Plaintiffs' amended complaint, Vanguard maintains

10  that "[t]hese facts and circumstances will vary from plan to plan but generally include an

11  assessment of the types of fees being charged to the plan, allocation options, plan design, asset

12  size, participant demographics, and the philosophy of the benefit program – *all of which should be*

13  *documented for in the plan's record*." (emphasis added). Of course, Defendants do not provide

14  any such analysis in their memorandum of law or even suggest that such an analysis exists in Plan

15  documents.[2]

16    Finally, and arguing against decades of U.S. Supreme Court case law on the nature of

17  representative claims under ERISA Section 502(a)(2), Defendants contend that "Plaintiffs do not

18  plausibly allege a loss to the Plan, . . . [because] the fee allocation harmed a subset of Plan

19  participants." *Id.* at 9.  Of course, there is no such thing as an "individual loss" for representative

---

[2] Nor do Defendants' reliance on revenue sharing models (see, e.g., Dkt. #30 at 21-22), have any relevance here, as Defendants have admittedly used a per-capita model throughout the Class Period. Nor are Plaintiffs maintaining that revenue sharing is *per se* unreasonable. This is a red herring argument. However, a fee allocation choice must be fully explained and justified, which Defendants have not done with regard to their discretionary fee allocation system in the REI Plan. *See supra* pp. 14-16.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(3:24-cv-06032)

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

claims under ERISA Section 502(a)(2) brought under the Plan. *See LaRue*, 552 U.S. at 256 ("§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries"). Instead, ERISA's carefully crafted remedial scheme is laid out in 29 U.S.C. § 1132(a). Section 1132(a)(2) specifically authorizes a plan participant or beneficiary to bring a civil action on behalf of the plan and to seek "appropriate," *i.e.* plan-wide, "relief under [29 U.S.C. §] 1109." 29 U.S.C. § 1132(a)(2). Section 1109 makes clear that the relief provided for therein goes to the plan. It provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan any losses to the plan* resulting from each such breach, and *to restore to such plan any profits of such fiduciary* which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added).

The Supreme Court and this Court have time and again reiterated that § 1132(a)(2) claims are "brought in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *see also, e.g.*, *Varity Corp. v. Howe*, 516 U.S. 489, 516 (1996) (noting ERISA's fiduciary duties "must" be enforced "in a representative capacity") (Thomas, J., dissenting); *Hawkins v. Cintas Corp.*, 32 F.4th 625, 630 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 564, 214 L. Ed. 2d 335 (2023) ("Section [1132](a)(2) suits are 'brought in a representative capacity on behalf of the plan as a whole.'"). Unsurprisingly, then, there is nothing in ERISA law that says a subset of Plan participants may not bring a representative claim for Plan-wide relief for those impacted by the losses alleged to the Plan. Indeed, it literally happens all the time with regard to ERISA investment underperformance claims when only those subset of participants in the underperforming investments are part of the proposed Class who seek redress

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

on behalf of the Plan. *See, e.g., Anderson v. Intel Corp. Inv. Pol'y Comm.*, No. 22-16268, 2025 WL 1463295, at *2 (9th Cir. May 22, 2025) ("Anderson asked the district court to certify a class consisting of all plan participants whose accounts were invested in the target-date funds or global diversified funds after October 2009."). Certifying an ERISA Section 502(a)(2) for a subset of participants who suffered from having to carry the entire RKA fee burden for the rest of Plan participants is no different.  Indeed, because there is no such thing as a non-representative claim under § 1132(a)(2) and § 1109, Plaintiffs can obtain Plan-wide remedies for the subset of Plan participants they represent who paid on average of $78 per year during the Class Period and had to "subsidize the cost of administration for the lower-balance participants," who paid nothing at all. Dkt. #26, at ¶ 98.[3]

For all these reasons, Plaintiffs have plausibly alleged a breach of the duty of loyalty by the Plan Committee, which used its discretion without reason, to favor once class of REI participants over another. The disfavored group had to subsidize the costs of RKA services for the entire REI Plan. Such fiduciary action by the Plan Committee caused millions of dollars of retirement losses for this subset of Plan participants represented by Plaintiffs.

### C.    Plaintiffs allege a plausible breach of the duty to monitor (Count II).

REI has the power to create and oversee the Plan Committee. *See* FAC, ¶ 20. As such, REI had a duty to monitor the Plan Committee. *See Solis v. Webb*, 931 F. Supp. 2d 936, 953 (N.D. Cal. 2012) ("Implicit within the duty to select and retain fiduciaries is a duty to monitor their

---

[3] As highlighted above, Defendants insist that "Plaintiffs do not complain that the per participant was excessive." Dkt. #30 at 19. In fact, Plaintiff allege that they and a subset of Class complain in the amended complaint that paying $78 for RKA fees, when the negotiated rate with Schwab during the same period was $38 for RKA fees, is excessive and imprudent. Dkt. #26, at ¶ 98-108.

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

performance."). This required REI and its Board "to ensure that" the Plan Committee complied "with the terms of the plan and statutory standards." 29 C.F.R. § 2509.75-8, at FR–17.

As a consequence, in addition to stating a claim for breaches of the fiduciary duty of prudence and loyalty, against Defendant Plan Committee based on excessive and discriminatory RKA fees, Plaintiffs have provided "specific factual basis to support . . . a lack of legally sufficient monitoring by Defendants." *In re Nokia ERISA Litig.*, 2011 WL 7310321, at \*5 (S.D.N.Y. Sept. 6, 2011); FAC ¶¶ 20, 145-152. Because the allegations of breach of the fiduciary duties of prudence and loyalty, state a plausible claim, "Plaintiff[s'] derivative claim that Defendants violated the duty to monitor also states a plausible claim for relief, and survives the motion to dismiss." *See Bracalente*, 2023 WL 5184138, at \*83-84.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss the amended complaint in its entirety.

Dated: June 13, 2025                              Respectfully submitted,

                                                  **WALCHESKE & LUZI, LLC**

                                                  /s/ Paul M. Secunda
                                                  Paul M. Secunda
                                                  (admitted *pro hac vice*)
                                                  235 N. Executive Dr., Suite 240
                                                  Brookfield, Wisconsin 53005
                                                  Telephone: (414) 828-2372
                                                  Facsimile: (262) 565-6469
                                                  Email: psecunda@walcheskeluzi.com

                                                  **DEBOFSKY LAW, LTD.**

                                                  */s/ Marie E. Casciari*
                                                  Marie E. Casciari (WSBA # 58223)
                                                  (local counsel)
                                                  3101 Western Ave., Suite 350
                                                  Seattle, WA 98121

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

Telephone: 206-333-2696
Facsimile: (312) 600-4426
Email: mcasciari@debofsky.com

*Attorneys for Plaintiffs and
Proposed Class*

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(3:24-cv-06032)

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this memorandum contains 5416 words, in compliance with the local civil rules.

Dated: June 13, 2025                              */s/ Paul M. Secunda*
                                                  Paul M. Secunda

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 13, 2025, the foregoing Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss the Amended Complaint was filed via the Court's CM/ECF system, which will send notification to all counsel of record.

                                                  */s/ Paul M. Secunda*
                                                  Paul M. Secunda

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(3:24-cv-06032)

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372