1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

MACY SMITH AND SALLY JOHNSON, | Case No. 3:24-cv-06032-TMC

9

individually and on behalf others similarly

ORDER GRANTING MOTION TO
DISMISS

10

situated,

11

Plaintiff,

12

v.

13

RECREATIONAL EQUIPMENT INC.;

14

BOARD OF DIRECTORS OF

15

RECREATIONAL EQUIPMENT INC.;

16

RETIREMENT PLAN COMMITTEE OF

17

RECREATIONAL EQUIPMENT INC ,

18

Defendant.

19

## I.    INTRODUCTION

20

This case arises from Defendant Recreational Equipment Inc.'s ("REI") policy of

21

charging record-keeping and administrative fees only to participant accounts in its defined

22

contribution retirement program with balances of at least $5,000. Plaintiffs Macy Smith and

23

Sally Johnson bring this suit on behalf of themselves and as representatives of a putative class of

24

participants and beneficiaries of REI's retirement plan against Defendants REI, Board of Directors of REI ("Board"), and Retirement Plan Committee of REI ("Plan Committee"). Dkt. 26. Plaintiffs allege that Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* by imposing fees only on participant accounts containing $5,000 or more. *Id.*

Defendants moved to dismiss, arguing that the "settlor doctrine" bars Plaintiffs' claims because REI wrote the $5,000 threshold into the terms of the retirement plan. And even if the claims are not barred, Defendants contend that the complaint does not plausibly allege a breach of fiduciary duty. Dkt. 30. Because REI's retirement plan provides the Plan Committee some discretion to alter the $5,000 threshold for allocating fees to participant accounts, the Court concludes that the settlor doctrine does not preclude Plaintiffs' claims. But because Plaintiffs do not allege a cognizable legal theory that a fiduciary duty was breached, the Court GRANTS the motion to dismiss (Dkt. 30). And because the defect in Plaintiffs' legal theory could not be cured by the allegation of other facts, Plaintiffs' claims are DISMISSED with prejudice.

## II.    BACKGROUND

REI is an "American retail and outdoor recreational services corporation" that "sells camping gear, hiking, climbing, cycling, water, running, fitness, snow, travel equipment, and men, women, and kids clothing." Dkt. 26 ¶ 19. REI provides it employees with a defined contribution retirement plan ("REI Plan") which permits participants to contribute to their account over time. *Id.* ¶¶ 20, 31. At retirement, participants take the amount that is available in their accounts, which is determined by the amount contributed, the market performance of the contributions, and any expenses deducted from the account. *Id.* ¶¶ 31, 33. The REI Plan "is one of the largest retirement plans in the country . . . [w]ith 24,455 active participants and $1,020,194,239 billion in assets under management as of December 31, 2023." *Id.* ¶ 14.

Retirement plans such as the REI Plan require administrative services to operate day to day and incur recordkeeping and administrative ("RKA") fees. *Id.* ¶ 37; Dkt. 31-2 at 5.[1] Plaintiffs allege that "[t]here are at least three types of RKA services provided by all recordkeepers and other service providers to massive plans like the REI Plan. . . . [and these] Bundled RKA services are fungible and commoditized, and are standard services provided by all major record keepers for massive ERISA 401(k) plans, like the REI Plan." Dkt. 26 ¶¶ 41–43. Guidance from the United States Department of Labor ("DOL"), the agency that oversees ERISA, states that Plan sponsors may choose to pay for these expenses or deduct the fees from participant account balances. Dkt. 31-2 at 3, 5. There are two common ways of allocating the fees—the pro rata method and per capita method. *Id.* at 5. The pro rata method allocates expenses in proportion to the amount in the individual account and the per capita method charges expenses equally to each account, regardless of the value of its assets. *Id.*

The REI Plan retained Schwab Retirement Plan Services Inc. ("Schwab") as a recordkeeper and pays Schwab RKA fees to administer the plan. *Id.* ¶¶ 10, 39. Plaintiffs assert that the Bundled RKA services provided by Schwab are standard and comparable to other RKA

---

[1] Defendants request that the Court take judicial notice of the REI Plan, ERISA participant fee disclosures, publications by the DOL, and a report published by Vanguard. *See* Dkt. 31. Defendants assert that the REI Plan, fee disclosures, and Vanguard report may be considered because they are incorporated into Plaintiffs' complaint. Dkt. 30 at 10 n.2, 5, 21. They add that the Court may consider filings from the DOL because they are documents publicly available on the DOL's website, the authenticity is undisputed, and they are incorporated into the complaint. *Id.* at 10 n.2, 4. The Court may consider a document not physically attached to the complaint if the parties do not contest its authenticity and the plaintiff necessarily relies on it. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The Court may also consider documents made publicly available by governmental entities where there is no dispute of authenticity or accuracy. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Thus, while the Court takes the facts alleged in the amended complaint as true and construes them in the light most favorable to Plaintiffs, it also takes judicial notice of the documents requested by Defendants. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

services provided by competitor recordkeepers in quality or type. *Id.* ¶¶ 45, 48. Plaintiffs allege, however, that "Defendants failed to take advantage of REI's massive size to timely negotiate lower fees from Schwab or any other service providers[.]" *Id.* ¶ 113. They also assert that "Defendants did not conduct effective or competitive bidding for Bundled RKA services . . . and failed to use the Plan's enormous size to negotiate rebates from Schwab." *Id.* ¶ 114.

With respect to RKA fees, the REI Plan provides:

10.4 Expenses

All reasonable expenses that are necessary to operate and administer the Plan may be deducted from the Trust Fund or, at the election of the Company, paid directly by the Employers. . . .

(b)    On or after October 1, 2015, the following shall apply to expenses not paid directly by the Employers:

(i)    Expenses related to a particular Participant Account, subaccount, or investment fund may be charged directly to that Account, subaccount, or fund. The Retirement Plan Committee shall determine which of such expenses shall be charged to a particular Participant Account and the amount to be charged.

(ii)    Subject to (b)(v), record-keeping expense not paid under (b)(i) shall be charged on a per capita basis (i.e. the same amount charged to each Participant) to the Accounts of Participants whose combined account balances equal or exceed $5,000 in value. If a Participant has more than one Account, the per capita expense shall be divided among the Participant's Accounts pro rata.

. . . .

(v)    The Retirement Plan Committee may exempt from per capita charges accounts whose value is below a threshold set by the Committee that is greater than or less than the threshold in (b)(ii). The Retirement Plan Committee may set separate thresholds for different types of per capita charges.

Dkt. 31-1 at 70–71.

Plaintiffs allege that the "Plan participant fee disclosure indicates the total annual per capita Plan Administrative fee for trust, custody, and recordkeeping services should have been

only $38 per participant." Dkt. 26 ¶ 93; *see* Dkt. 31-5 at 13; Dkt. 31-6 at 4; Dkt. 31-8 at 12;

Dkt. 31-9 at 13; Dkt. 31-10 at 16; Dkt. 31-11 at 17; Dkt. 31-12 at 17; Dkt. 31-13 at 14 (REI

Plan's Fee and Investment Notice from 2017–2023). But the fee was "deducted from the Plan by

dividing the fees evenly across participant accounts that are at least $5,000 on a per capita basis."

Dkt. 26 ¶ 47 (emphasis removed); *see* Dkt. 31-1 at 70.

In other words, the "Plan Committee subsidized the participants with a balance less than

$5,000 by requiring that participants with a balance greater than $5,000 pay for all Bundled RKA

fees." Dkt. 26 ¶ 96. As a result, Plaintiffs allege that "[p]articipants with balances greater than

$5,000 were charged $78 per year," which is "$40 more than their fair share of $38 per

participant." *Id.* ¶ 108. "Of the 24,800 Plan participants in 2023, there were approximately

12,040 that had account balances of greater than $5,000 in 2023." *Id.* ¶ 107. And Plaintiffs assert

that the "Plan Committee never calculated and discuss[ed] the estimated amount that would be

paid by all participants over $5,000 for Bundled RKA fees as a result of this discriminatory fee

structure." *Id.* ¶ 105.

Based on these facts, Plaintiffs claim that Defendants breached their fiduciary duties of

prudence and loyalty as well as their duty to monitor. *Id.* ¶¶ 132–51. First, Plaintiffs assert that

Defendants breached their duty of prudence to Plan participants "by failing to[] ensure that the

Plan's Bundled RKA fees were reasonable and non-discriminatory for those with account

balances greater than $5,000, defray reasonable expenses of administering the Plan, and act with

the loyalty, care, skill, diligence, and prudence required by ERISA." *Id.* ¶ 137. Second, Plaintiffs

allege that "Defendants, with regard to participants with account balances greater than $5,000,

violated their duties of loyalty . . . by charging them unreasonable Bundled RKA fees and by

having them subsidize the cost of administration for lower-balance Participants." *Id.* ¶ 141.

Third, Plaintiffs assert REI and the Board breached their duty to monitor by: (1) failing to

monitor and evaluate the performance of individuals responsible for Plan Bundled RKA fees; (2) failing to monitor the process by which the Plan's recordkeeper, Schwab, was evaluated and failing to investigate the availability of more reasonably-priced recordkeepers; and (3) failing to remove individuals responsible for the Plan's Bundled RKA fees. *Id.* ¶ 149.

Defendants moved to dismiss on May 9, 2025. Dkt. 30. Plaintiffs responded, Dkt. 32, and Defendants replied, Dkt. 33. The motion is fully briefed and ripe for the Court's consideration.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for lack of a cognizable legal theory or the "absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). On a Rule 12(b)(6) motion, the Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr.*, 768 F.3d at 945, but will test the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When granting a motion to dismiss, a district court should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### IV.    DISCUSSION

#### A.    The "settlor doctrine" does not bar Plaintiffs' claims.

The Supreme Court has held that while "[n]othing in ERISA requires employers to establish employee benefits plans[,]" the statute does "seek to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) (citations omitted). The statute thus provides that:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such
> plan or exercises any authority or control respecting management or disposition of
> its assets, (ii) he renders investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th

Cir. 2004) ("An individual or entity performs a fiduciary function with respect to a pension plan

when exercising any discretionary authority or discretionary control respecting management of

such plan or exercising any authority or control respecting management or disposition of its

assets under ERISA.") (citation modified).

Still, the Supreme Court has held that "Plan sponsors who alter the terms of a plan do not

fall into the category of fiduciaries." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999)

(quoting *Spink*, 517 U.S. at 885). This principle, known as the "settlor doctrine," reflects the fact

that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any

time, to adopt, modify, or terminate welfare plans." *Spink*, 517 U.S. at 890 (citing *Curtiss-Wright

Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)). For example, "decisions regarding the form or

structure of a plan are generally settlor functions." *Beck v. PACE Int'l Union*, 551 U.S. 96, 101–

02 (2007) (citation modified); *see also Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833,

838 (9th Cir. 2018) ("[o]nly discretionary acts of plan . . . management trigger fiduciary duties.")

(citation omitted). Thus, in every case alleging a breach of fiduciary duty under ERISA, "the

threshold question is not whether the actions of some person employed to provide services under

a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a

fiduciary (that is, was performing a fiduciary function) when taking the action subject to

complaint." *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000).

Defendants contend that the settlor doctrine bars Plaintiffs' claims because the "fee allocation methodology they challenge is a 'plan design' decision made by the plan sponsor." Dkt. 30 at 15. They argue that decisions such as "whether to offer a plan, along with related decisions over the type of benefits, how the plan will be funded, and whether to charge expenses to the plan . . . are all plan design decisions made in a settlor capacity, not a fiduciary one." *Id.* at 16.

Defendants also assert that ERISA's fiduciary duty provisions are invoked only when an individual exercises discretionary authority in administering a plan or implementing its terms. Dkt. 30 at 16. But here, "the Plan document memorializes REI's decision that recordkeeping fees 'shall be charged' only to participants 'whose combined account balances equal or exceed $5,000 in value.'" *Id.* at 17 (quoting Dkt. 31-1 at 70). Since the method of allocating RKA fees is part of the plan design—a design that provides no discretion to the Plan Committee due to unambiguous and mandatory language—Defendants argue that it cannot support a breach of fiduciary duty claim. *Id.*

Plaintiffs respond that the settlor doctrine does not apply because the "Plan gives the Plan Committee express fiduciary discretion to deviate from the $5000 threshold limit for any individual Plan participant." Dkt. 32 at 13 (emphasis removed). Specifically, Plaintiffs contend that "the discretion provided to the Plan Committee is not just between those who have more than $5000 in their account and those who do not." *Id.* at 14. For example, the "discretion of the Plan Committee extends to exempting from per capita charges accounts whose value is below a threshold set by the Committee[.]" *Id.* Because the Plan Committee could exercise discretion with respect to exemptions and "setting thresholds for different types of per capita charges for certain individual participants," Plaintiffs argue that the method of allocating expenses is sufficiently discretionary to trigger a fiduciary duty. *Id.*

In reply, Defendants maintain that the decision to set a higher or lower threshold amount for paying RKA fees is made in a settlor capacity because it is a question of plan design. Dkt. 33 at 8. And since the Plan grants the Committee only the power "to move the fee threshold up or down . . . [and] says nothing about utilizing a completely different model for paying fees," Defendants argue that Plaintiffs are challenging a settlor decision, not a fiduciary one. *Id.* at 7.

The Court agrees with Defendants that section 10.4(b)(ii) of the Plan, read in isolation, imposes an unambiguous and mandatory requirement that participant accounts with at least $5,000 must be charged RKA fees. *See* Dkt. 31-1 at 70. For example, the Plan provides:

> On or after October 1, 2015, the following shall apply to expenses not paid directly by the Employers: . . . (ii) Subject to (b)(v), record-keeping expenses not paid under (b)(i) *shall be charged* on a per capita basis (i.e. the same amount charged to each Participant) to the Accounts of Participants whose combined account balances equal or exceed $5,000 in value. If a Participant has more than one Account, the per capita expense *shall be* divided among the Participant's Accounts pro rata.

*Id.* (emphasis added). This plain language of the Plan provides a method for fee allocation that does not leave any discretion to the Plan Committee. *See id.*; *Hughes Aircraft Co.*, 525 U.S. at 444 ("ERISA's fiduciary duty requirement simply is not implicated where [the defendant], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated.").

Section 10.4(b)(v), however, alters that analysis. It provides:

> The Retirement Plan Committee *may exempt from per capita charges* accounts whose value is below a threshold set by the Committee that is greater than or less than the threshold in (b)(ii). The Retirement Plan Committee *may set* separate thresholds for different types of per capita charges.

Dkt. 31-1 at 71 (emphasis added). Unlike section 10.4(b)(ii), section 10.4(b)(v) allows the Plan Committee to not only exempt certain accounts from per capita charges based on a threshold set by the Committee that is greater or less than $5,000, but also to set separate thresholds for different types of per capita charges. *See id.*

Plaintiffs argue that because the Plan Committee may change the default threshold set by the Plan, the decision *not* to exercise that discretion and instead stick with the default of $5,000 is itself a discretionary act that triggers a fiduciary duty. Dkt. 32 at 13 ("even not exercising that power is a fiduciary discretionary act by Defendants that must be reasonable and explained"). Defendants reply that while the Plan Committee may adjust the dollar threshold for per capita charges, the overall structure that Plaintiffs challenge—applying charges on a per capita basis, but only to accounts with balances over a certain amount—is a settlor decision required by the language of the Plan. Dkt. 33 at 7–8.

No party has presented a case with a directly analogous fact pattern. Without section 10.4(b)(v), the Court would likely conclude that the Plan's allocation of expenses in section 10.4(b)(ii) is a plan design decision encompassed by the settlor doctrine. *See Hughes Aircraft Co.*, 525 U.S. at 444. But Plaintiffs persuasively argue that the addition of section 10.4(b)(v) brings the threshold for which to assess per capita charges within the exercise of "discretionary authority or discretionary control" respecting the management or administration of the Plan. 29 U.S.C. § 1002(21)(A). And, drawing all reasonable inferences in Plaintiffs' favor, the Plan language does not forbid the Plan Committee from setting the balance threshold for per capita charges at an amount low enough to, in practice, assess the charges equally across all accounts. The Plan thus confers enough discretion on the Plan Committee to determine the method for assessing per capita charges to trigger the Committee's fiduciary obligations. The settlor doctrine does not require dismissal of Plaintiff's complaint.

**B.    Duty of Prudence**

The Court next turns to Plaintiffs' substantive claim that the Plan Committee violated its duty of prudence. An ERISA fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence

under the circumstances" that a prudent person "acting in a like capacity and familiar with such matters" would use. 29 U.S.C. § 1104(a)(1)(B). Because the "duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts[,] the appropriate inquiry will necessarily be context specific." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (citation modified). "At times, the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

Defendants argue that the Plan Committee's method of allocating RKA fees does not breach its duty of prudence because "there is no fiduciary duty to ensure participants pay a proportionately equal share of plan expenses[.]" Dkt. 30 at 20. They point out that the Ninth Circuit has held that ERISA does not impose a requirement to maximize pecuniary benefits. *Id.* at 21 (citing *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004)) ("ERISA does not create an exclusive duty to maximize pecuniary benefits . . . [nor does it] require a fiduciary to resolve every issue of interpretation in favor of plan beneficiaries."). They also argue that Plaintiffs do not point to any legal authority that suggests that "allocating recordkeeping expenses to a subset of participants is a breach of a duty of prudence." *Id.* at 22.

Defendants also contend that their method of allocating RKA fees conforms to guidance provided by the DOL. *Id.* at 20–21. The Supreme Court has held that interpretative guidance from administrative agencies such as those "contained in policy statements, agency manuals, and enforcement guidelines" are entitled to respect, "but only to the extent that those interpretations have the power to persuade[.]" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The Ninth Circuit has applied this standard and found certain DOL guidance such as advisory opinions to be persuasive in ERISA cases. *See*

*Bugielski v. AT&T Servs., Inc.*, 76 F.4th 894, 902 (9th Cir. 2023), *cert. denied*, 145 S. Ct. 1959 (2025) (concluding that the DOL's advisory opinion was persuasive). Interpretative bulletins are similarly "not controlling" but courts may grant "considerable and in some cases decisive weight" to a bulletin depending on the "thoroughness evident in its consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements[.]" *Skidmore*, 323 U.S. at 140.

DOL Field Assistance Bulletin ("FAB") 2003-03 acknowledges that both the pro rata and per capita methods of allocating fees may be reasonable options. *See* Dkt. 31-3 at 3. In that publication, DOL explains:

> While a pro rata method of allocating expenses among individual accounts (i.e., allocations made on the basis of assets in the individual account) would appear in most cases to be an equitable method of allocation of expenses among participants, it is not the only permissible method. A per capita method of allocating expenses among individual accounts (i.e., expenses charged equally to each account, without regard to assets in the individual account) may also provide a reasonable method of allocating certain fixed administrative expenses of the plan.

*Id.* Defendants explain that their allocation method has the same practical effect as a pro rata method—accounts with higher balances pay more in RKA fees. Dkt. 30 at 20–21. If the DOL guidance endorses this consequence of pro rata allocation as an "equitable method," Dkt. 31-3 at 3, how can a similar consequence of a threshold per capita method amount to a breach of fiduciary duty? Because charging RKA fees only to accounts with at least $5,000 appears to fall within DOL's guidance, and Plaintiffs cannot point to any contrary case law, Defendants argue that Plaintiffs do not plausibly allege that the Plan Committee acted imprudently. Dkt. 30 at 21; Dkt. 33 at 9.

Plaintiffs contend that the Plan Committee breached its duty to "incur only costs that are reasonable." Dkt. 32 at 6 (citing *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016)). Plaintiffs point to *Nagy v. CEP Am., LLC*, 2024 WL 2808648, at *3 (N.D. Cal. May 30, 2024) to

argue that courts have found that a plaintiff need only plead that administrative fees are excessive in relation to the specific services the recordkeepers provided to state a breach of fiduciary duty claim. *Id.* at 7. Plaintiffs assert they are contesting the fact that, if the RKA fees were distributed equally across all account holders, they would have paid only $38 per person. *Id.* at 8. But because RKA fees were charged only to account holders with at least $5,000 dollars—thus exempting many low-balance accounts—they paid $78 per person. *Id.* Plaintiffs argue that like the plaintiffs in *Nagy*, their claim is that this difference is unreasonably high and a "reasonably prudent plan fiduciary would not agree to pay an over 105% premium for what they could otherwise pay for the materially similar level and quality of Bundled RKA services." *Id.* (quoting Dkt. 26 ¶ 109).

Plaintiffs point to several cases to argue that "in addition to *Nagy*, district courts in the Ninth Circuit 'have repeatedly found allegations like these sufficient to state a claim of imprudence based on excessive recordkeeping fees.'" *Id.* at 8–9 (citing *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at *11 (S.D. Cal. June 24, 2020); *Schuster v. Swinerton Inc.*, Case No. 3:24-cv-04970-JSC, 2025 WL 1069887 (N.D. Cal. April 8, 2025); *Coppel v. SeaWorld Parks & Ent., Inc.*, 2023 WL 2942462, at *14 (S.D. Cal. Mar. 22, 2023)).

Plaintiffs' arguments are unpersuasive. To start, their cited cases involve plaintiffs seeking relief for *all* Plan participants based on alleged losses to the Plan. *See id.* For example, in *Nagy*, the plaintiffs were participants in a 401(k) Profit Sharing Plan who claimed the defendants paid unreasonably high recordkeeping fees (charging fees from $250 to $450 per participant) compared to recordkeeping services for plans of similar size (charging an average of $50 per participant). 2024 WL 2808648, at *4. In *Tibble*, the plan beneficiaries claimed that the defendant "breached its fiduciary duties by offering higher priced retail-class mutual funds as Plan investments when materially identical lower priced institutional-class mutual funds were

available." 843 F.3d at 1191 (citation modified). Next, in *Bouvy*, the plan participants claimed that the defendants breached their duties of prudence and loyalty by compensating the recordkeeper with excessive recordkeeping fees. 2020 WL 3448385, at *10. In *Schuster*, the plan beneficiaries similarly argued that the defendants breached their "duty of prudence by incurring excessive recordkeeping and administrative fees charged by the two Plan recordkeepers[.]" 2025 WL 1069887, at *2. Finally, in *Coppel*, plan participants alleged that the defendants' "failure to monitor or competitively bid the Plan's service providers resulted in the Plan paying unreasonably high fees through its revenue sharing arrangement with . . . the Plan's recordkeeper." 2023 WL 2942462, at *13.

These cases are inapt because Plaintiffs here seek relief based on alleged harm to a subset of participants for the benefit of other participants in the plan. *See* Dkt. 26 ¶ 116 ("High-balance participants discriminatorily subsidized the costs of administration for the low-balance participants and pay additional unreasonable Total RKA fees."). Plaintiffs are not alleging that the RKA fees paid to Schwab are unreasonable overall or otherwise violate ERISA. *See generally* Dkt. 26; *see Wright*, 360 F.3d at 1100 ("ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA.") (citation omitted). Plaintiffs claim only that the fees are unreasonably distributed. *See generally* Dkt. 26.

But this legal theory ignores the obvious fact that *every* method of allocating RKA fees could be described as resulting in some plan participants subsidizing the costs of administration for others. In the pro rata method, participants with higher balances could be said to subsidize administration fees for those with lower balances. In the universal per capita method—which Plaintiffs seem to advocate in their complaint—participants with lower balances could be said to subsidize those with higher balances, since a participant with only $500 in their account would pay the same fee (but a far greater portion of their assets) as a participant with $500,000. There is

nothing unique or even avoidable about the result of Defendants' hybrid method, where RKA fees are assessed per capita, but only for accounts with a balance above a certain threshold.

The Supreme Court has observed that "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983). Plaintiffs do not cite to any other authority showing that an ERISA fiduciary has a duty to charge RKA fees equally across all participants, or to avoid allocating a larger amount of fees to accounts with higher balances. *See generally* Dkt. 32.

Instead, guidance from the DOL—which the Court finds persuasive—explains that an expense allocation method which "disfavors one class of participants" may still be prudent and satisfy a plan fiduciary's obligation to act "solely in the interest" of plan participants so long as "a rational basis exists for the selected method." Dkt. 31-3 at 3. As FAB No. 2003-03 explains in full:

> A plan fiduciary must be prudent in the selection of the method of allocation. Prudence in such instances would, at a minimum, require a process by which the fiduciary weighs the competing interests of various classes of the plan's participants and the effects of various allocation methods on those interests. In addition to a deliberative process, a fiduciary's decision must satisfy the "solely in the interest of participants" standard. In this regard, a method of allocating expenses would not fail to be "solely in the interest of participants" merely because the selected method disfavors one class of participants, provided that a rational basis exists for the selected method.

*Id.*

Plaintiffs do not plausibly allege that the Plan Committee's decision to follow the $5,000 threshold set by the Plan lacked a deliberative process. Plaintiffs only non-conclusory allegation—that "the Plan Committee never calculated and discuss [sic] the estimated amount that would be paid by all participants over $5,000 for Bundled RKA fees"—is insufficient. *See* Dkt. 26 ¶ 105. An alleged failure to discuss the estimated amount, which continuously fluctuates

based on the number of plan participants and their account balances, does not alone show that Defendants failed to exercise prudence in weighing the broader interests of plan participants in setting the threshold for per capita fee allocation.

This is especially so when, even drawing all reasonable inferences in their favor, Plaintiffs cannot show that the Plan Committee's decision to stick with the $5,000 default threshold set by the Plan's language lacked a rational basis. As explained above, all expense allocation methods result in some degree of subsidy from one class of participants to another. Here, the chosen method exempts participants with low balances and splits the expenses equally among all participants who have at least $5,000 in their accounts. This overall effect—accounts with more money pay more in expenses—is akin to that caused by the pro rata method, which the DOL explains "would appear in most cases to be an equitable method of allocation of expenses among participants[.]" Dkt. 31-3 at 3. There is nothing irrational about this approach, and Plaintiffs point to no authority from which they could prove that it violates the Plan Committee's fiduciary duties. As Defendants persuasively argue, "assessing fees to participants with larger balances who were better situated to pay those fees is clearly within the 'range of reasonable judgments' a fiduciary can make." Dkt. 30 at 8. Plaintiffs fail to state a claim for a violation of the duty of prudence.

## C.    Duty of Loyalty

The duty of loyalty "requires plan fiduciaries to act solely in the interest of the [plan's] participants and beneficiaries." *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1025 (2025) (citation modified). "Among other things, the duty of loyalty requires the fiduciary to 'deal fairly and honestly with beneficiaries[.]'" *Id.* (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996)). This includes the obligation to provide Plan participants with complete and accurate information and a duty not to mislead. *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1051

(9th Cir. 2020). "Section 1106 supplements the fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed likely to injure the pension plan" such as self-dealing or conflicted transactions with third parties. *Cunningham*, 145 S. Ct. at 1025 (citation modified).

Defendants argue that a breach of the duty of loyalty occurs when the fiduciary engages in self-dealing or transactions that benefit itself or a third-party at the expense of Plan participants. Dkt. 30 at 23 (citing *Thomson v. Caesars Holdings, Inc.*, 661 F. Supp. 3d 1043, 1054 (D. Nev. Mar. 13, 2023)); Dkt 33 at 11. But here, Defendants contend that "Plaintiffs allege only that the methodology for allocating recordkeeping expenses favors one set of Plan participants at the expense of another, not that it benefits REI or any other third party." Dkt. 30 at 24. Absent allegations that the Plan Committee's method of allocating RKA fees benefited themselves or non-Plan entities, Defendants contend that Plaintiffs fail to state a disloyalty claim. *Id.*

Plaintiffs respond that a breach of the duty of loyalty is not limited to self-dealing or benefiting a third party. Dkt. 32 at 10 (citing *Varity Corp.*, 516 U.S. at 514; *Summers v. State Street Bank and Tr. Co.*, 104 F.3d 105, 108 (7th Cir. 1997)). Plaintiffs maintain that the duty of loyalty requires that Defendants treat all participants and beneficiaries impartially. *Id.* But since Defendants "favor[ed] one group of Plan participants over another for no rational reason," Plaintiffs claim that the Plan Committee was disloyal. *Id.*

The Court agrees with Defendants that *Varity Corp.* and *Summer* are not controlling because neither case addresses a situation like the one here, where a subset of Plan participants seek relief from a method of allocating RKA fees. *See* Dkt. 33 at 11–12. In *Varity Corp.*, the Supreme Court invoked the duty of impartiality while holding that Section 502(a)(3) of ERISA provides a remedy for individual beneficiaries in addition to the plan as a whole. 516 U.S. at 514.

In *Summers*, the Seventh Circuit noted the need for impartiality when discussing that the employer should not favor active employees over retired employees. 104 F.3d at 108. These cases support the general proposition that a subset of plan beneficiaries may be able to maintain an ERISA action for breach of the duty of loyalty. But they do not support Plaintiffs' theory of breach, which is based centrally on the allegation that the Plan Committee allowed larger account holders to subsidize the RKA expenses for smaller account holders. *See* Dkt. 32 at 11.

Additionally, while the duty of loyalty may encompass claims beyond self-dealing or transactions that benefit third parties—such as a duty to accurately inform Plan participants—Plaintiffs have not pled any such violation. *See Guenther*, 972 F.3d at 1051 ("ERISA imposes 'an obligation to convey complete and accurate information material to the beneficiary's circumstance[.]'") (citation omitted).

First, none of Plaintiffs' allegations raise a plausible inference that the Plan Committee's decision to charge RKA fees to participant accounts with at least $5,000 was made to benefit Defendants or a third party. *See, e.g.*, Dkt. 26 ¶ 95 ("The Plan Committee discriminatorily, and without reason, allocated the Bundled RKA fees only to those participants with balances greater than $5,000."); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *6 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) (dismissing a duty of loyalty claim because plaintiffs failed to plead "facts sufficient to raise a plausible inference that defendants had engaged in self-dealing or had taken any of the actions alleged for the purpose of benefitting themselves or a third-party entity.").

Second, Plaintiffs do not allege that Defendants misinformed or deceived Plan participants about the expense allocation. *See Wayne v. Pac. Bell*, 238 F.3d 1048, 1055 (9th Cir. 2001) ("As a fiduciary, [the defendant] also has a duty not to actively misinform plan participants and beneficiaries, whether or not there has been serious consideration."). Rather,

Plaintiffs' complaint depends largely on the information provided through the Plan's annual Fee and Investment Notices. *See, e.g.*, Dkt. 26 ¶ 93 ("The Plan participant fee disclosure indicates the total annual per capita Plan Administrative fee for trust, custody and recordkeeping services should have been only $38 per participant."); *see also* Dkt. 31 at 2–3 (list of exhibits for the Plan's Fee and Investment Notices from 2016 to 2023). Without any facts that show Defendants dealt with Plan participants unfairly or dishonestly, Plaintiffs have not plausibly alleged breach of the duty of loyalty. *See Beldock v. Microsoft Corp.*, No. C22-1082JLR, 2023 WL 1798171, at *7 (W.D. Wash. Feb. 7, 2023) (dismissing case for breach of the duty of loyalty that is based solely on the underperformance of a fund).

**D.    Duty to Monitor**

Defendants argue that Plaintiffs' duty to monitor claim should be dismissed because it is derivative of their other fiduciary duty claims. Dkt. 30 at 25; Dkt. 33 at 14. The Court agrees that the duty to monitor claim against REI and the Board is based on the same allegation that the Plan Committee's allocation of RKA fees breached its duty of prudence and loyalty. *See id.* Thus, for the reasons explained above, *see supra,* Sec.IV.B–C, Plaintiffs have not stated a claim for breach of the duty to monitor.

**E.    Loss to the REI Plan**

Finally, Defendants argue that when plaintiffs sue under Section 502(a)(2) of ERISA, they must seek to recover losses to the Plan, not individual losses. Dkt. 33 at 12 (citing 29 U.S.C. §§ 1132(a)(2), 1109(a)). Because Plaintiffs are not challenging the reasonableness of the fee being charged by Schwab to the Plan, but instead contesting the method of allocating the fees, Defendants contend that Plaintiffs are seeking relief for individual losses. *Id.* at 9, 24–25.

Plaintiffs respond that they are bringing these claims "in a representative capacity on behalf of the plan as a whole" and that "there is nothing in ERISA law that says a subset of Plan

participants may not bring a representative claim for Plan-wide relief for those impacted by the losses alleged to the Plan." Dkt. 32 at 16–17 (citations omitted). Plaintiffs maintain that under Sections 1132(a)(2) and 1109, "Plaintiffs can obtain Plan-wide remedies for the subset of Plan participants they represent who paid on average of $78 per year during the Class Period and had to 'subsidize the cost of administration for the lower-balance participants,' who paid nothing at all." *Id.* at 17 (quoting Dkt. 26 ¶ 98).

The Court disagrees. Under Section 1132(a)(2), a claim for fiduciary breach provides "a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants as a result of a fiduciary breach." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.,* 552 U.S. 248, 254, 256 (2008). "To allege a fiduciary breach . . . [the plaintiff] must allege that the fiduciary injured the benefit plan or otherwise jeopardized the entire plan or put at risk plan assets." *Id.* (citation modified). Although a participant may recover under Section 1132(a)(2) "for fiduciary breaches that impair the value of plan assets in a participant's individual account," that section does not provide a remedy for "individual injuries [that are] distinct from plan injuries." *LaRue*, 552 U.S. at 256.

Here, the claims are based only on RKA fees paid by Plan participants with accounts containing at least $5,000. Dkt. 26 ¶ 98. Plaintiffs do not allege that the entire Plan or any Plan assets were harmed because of the Plan Committee's allocation of fees. *See generally id.*

Plaintiffs' reliance on *Anderson v. Intel Corporation Investment Policy Committee* is misplaced. *See* Dkt. 32 at 17. There, the plaintiffs sought to represent a class of all plan participants whose accounts were invested in funds they alleged were producing unreasonably low returns. *Anderson*, 137 F.4th at 1020. While those claims encompassed only a subset of plan participants, the alleged losses to the investment funds harmed both those participants *and* the

plan as a whole. *See LaRue*, 552 U.S. at 256 (allowing claims for fiduciary breaches that affect *plan assets* in an individual account). But here, Plaintiffs are not asserting that the fees charged to the Plan by Schwab are impermissibly high—they claim only that they should have paid less of those fees and other Plan participants should have paid more. *See* Dkt. 26 at 29. Again, the relief sought is one based not on a loss to the whole Plan or any Plan assets, but to individual participants of the Plan. *See Wise*, 600 F.3d at 1189. This is particularly evident because if the Court granted the relief Plaintiffs seek, other Plan participants with account balances less than $5,000 be required to pay higher annual fees. *See* Dkt. 31-1 at 70. Since Plaintiffs seek only "a remedy for individual injuries distinct from plan injuries," their claims under Section 1132(a)(2) must also be dismissed on this basis. *See LaRue*, 552 U.S. at 256.

## V.    CONCLUSION

Plaintiffs have already once amended their complaint, *see* Dkt. 25; Dkt. 26, and they have not requested leave to amend their complaint a second time, *see* Dkt. 32. But even if they had, because this Court's ruling is based on Plaintiffs' failure to allege a cognizable legal theory, rather than on insufficient factual allegations to support their theory, the deficiencies in Plaintiffs' complaint cannot possibly be cured by the allegation of other facts and leave to amend would be futile. *See* Fed. R. Civ. P. 15(a); *Manzarek*, 519 F.3d at 1031.

The motion to dismiss (Dkt. 30) is thus GRANTED and the claims are DISMISSED with prejudice. The Clerk is directed to enter judgment in favor of Defendants and close the case.

Dated this 16th day of July, 2025.

Tiffany M. Cartwright
United States District Judge